No. 53,128

STATE OF KANSAS, *Appellee,* v. ROBERT LEE CARTY, JR., *Appellant.*

(644 P.2d 407)

Opinion filed May 8, 1982.

*David L. Thompson,* of Fitzpatrick & Thompson, of Independence, argued the cause and was on the brief for appellant.

*Jeffrey A. Chubb,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: The defendant and appellant, Robert Lee Carty, Jr., was convicted of one count of arson of the Coffeyville Memorial Hall, K.S.A. 21-3718, and one count of aggravated arson of the Caney Grade School, K.S.A. 21-3719, by jury trial in Montgomery District Court. He was sentenced to concurrent terms of ten to forty years and fifteen years to life. On appeal, his principal claims of error are that the trial court erred in admitting statements made by the defendant to a deputy sheriff during inter-

rogation, after defendant had requested counsel, and in admitting testimony of his confession to an act of arson seven years earlier.

On July 18, 1980, Carty was employed as the sole custodian of the Coffeyville Memorial Hall. He discovered a fire that day and turned in the alarm about 10 o'clock a.m. Carty was the only person in the building; the fire started in a storage area under the bleachers. The building was destroyed. An investigation conducted by the Coffeyville fire department with the assistance of an investigator from the State Fire Marshal's office concluded that the fire was caused by a defective light socket.

Carty was next employed as a custodian for the Caney Grade School. On September 10, 1980, a fire broke out about 8:30 o'clock a.m. The defendant discovered the fire and sounded the alarm. All teachers and pupils escaped without injury. The fire started in the janitor's room, just off the gymnasium. The Fire Marshal's office conducted an investigation. The defendant, when interviewed, gave conflicting stories as to whether he was in the janitor's room on the morning of the fire. No one had seen him in that room, but he could have entered or left the janitor's room by a route behind the bleachers which would not have been open to the view of others in the building. The investigators concluded that the fire was set, either intentionally or accidently; all other causes were eliminated.

A second investigation of the Memorial Hall fire, conducted by a different investigator, uncovered evidence of flammable liquid at three points of origin. A background check on the defendant disclosed that he was wanted for parole violation in Texas. He was arrested for Texas authorities on that charge on September 19, 1980, and was confined in the Montgomery County jail. Investigation of both fires continued, and Carty was the prime and the only suspect.

Deputy Sheriff Wilson testified that he brought Carty from the jail to the county attorney's office on September 22, 1980, to question him about the fires. The deputy read the *Miranda* warnings and announced that he was going to ask some questions about the fires. The officer testified that Carty stated that:

"[I]f I was there to charge him with the fire of the Caney School and possibly the Memorial Hall . . . that he wanted an attorney. And I advised him that I was not there for that purpose, all I wanted to do was talk to him."

Deputy Wilson made a written report of the interview. He

indicated therein that Mr. Carty had been advised of his rights before the interview started. The report continues:

"The first thing he said, if you charge [me] with the fire, I will sue you and I want a lawyer and won't tell you anything."

According to the deputy sheriff, Carty stated that he did not want to discuss the fires. He did not insist on the presence of an attorney, and he did not say he wanted to stop or terminate the conversation, so the officer continued with the interview. He did not advise Carty that he was the prime suspect. Throughout the interview, Carty did not admit setting the fires, but stated in substance that sometimes when he was depressed he did things that he could not later remember, and that he could have either accidentally or purposely set the fires at Memorial Hall or the Caney school, and not remember doing so. Carty also said that sometimes he became depressed as a result of constant criticism that he received at his place of employment, and he admitted that he was somewhat depressed on the day of the Caney school fire because he had some problems with the supervisors. Other facts will be developed during discussion of the issues raised.

We turn now to the first issue: Did the trial court err in admitting the oral statements made by the defendant to Deputy Wilson, after the defendant had requested counsel? We discussed the applicable rules relating to in-custody interrogation at length in the recent case of *State v. Newfield,* 229 Kan. 347, 623 P.2d 1349 (1981). During the interrogation which resulted in the challenged confession, Newfield had stated that he wanted to talk to an attorney before he talked to the agents any more. The questioning ceased; Newfield was offered the use of a telephone to call an attorney of his choice, and he was also told that he could have an attorney appointed for him. He declined to call an attorney, and stated that he did not want an appointed attorney. Some time later, he said, "Get your pencil. I'm going to tell you all about it." His confession followed. We held that under the totality of the circumstances, the statement was voluntarily, knowingly and intelligently made, and thus was admissible in evidence. We said:

"If police interrogation of a person in custody continues and a statement is taken in the absence of an attorney after the person has requested an attorney, a heavy burden rests on the State to demonstrate that the person knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

"In determining the voluntariness of a confession, it is to be viewed in light of the totality of the circumstances, including the following factors: (1) The duration and manner of interrogation; (2) the accused's ability upon request to communicate with the outside world; (3) the accused's age, intellect and background; and (4) the fairness of the officers in conducting the interrogation. Essential to the inquiry is the determination that the statement was the product of the free and independent will of the accused. If the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary."

"In cases of in-custody interrogation, police officers have the duty to take effective means to notify a person of his right to silence and to assure that the exercise of that right will be scrupulously honored. The critical safeguard required is the person's right to cut off further interrogation elicited by express questioning or its functional equivalent in the form of any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response." 229 Kan 347, Syl. ¶¶ 1, 2, 3.

We also said that when the admissibility of an in-custody statement, made after demand for an attorney, is challenged on appeal, this court must decide whether the State has adequately proved:

"(1) that the accused knowingly and intelligently waived his right to retained or appointed counsel; (2) that interrogation ceased for an appreciable period when the accused requested consultation with an attorney; and (3) that the statements made by the police after the request for counsel did not amount to questioning, its functional equivalent, or statements known to be likely to produce an incriminating response." 229 Kan. at 355.

Carty in effect demanded counsel if he was going to be charged with arson. He was informed that the purpose of the deputy was not to charge him with the offenses, but merely to talk to him. At that time, unbeknown to Carty, the Texas warrant on which he was detained was discovered in the course of the Caney and Coffeyville arson investigations; Carty was the sole, prime and only suspect in the arson cases; the purpose of the interrogation was to secure information helpful to the State in its arson investigation. As surely as day follows night, Carty was going to be charged with arson. Carty was not offered the use of a telephone to call an attorney; he was not specifically advised that he could then have appointed counsel; and the interrogation did not cease. There was no interruption. Instead interrogation continued without pause for some four hours. Defendant has a third or fourth grade education, and is described as illiterate.

The State argues that the defendant's request for counsel was conditional: If the deputy *was there to charge the defendant with*

*arson,* then he wanted an attorney; and that since the deputy was not there at that time for the purpose of filing charges against the defendant, the condition imposed by the defendant was not met. This argument is specious. The defendant cannot be held to know whether the deputy sheriff or some other official has the duty of filing criminal charges or to know the purpose of the interrogation. The defendant's desire was clear; if he was to be charged with arson, he wanted an attorney, and he did not wish to talk further to the officer without an attorney. His request was not "scrupulously honored." It was not honored at all. The statements made by the defendant came thereafter, and in direct response to continued questioning by the deputy sheriff. Carty did not voluntarily commence communication anew, after cessation of questioning, as was the case in *Newfield.*

The United States Supreme Court dealt with the same problem in *Edwards v. Arizona,* 451 U.S. 477, 68 L.Ed.2d 378, 101 S.Ct. 1880 (1981), decided after our opinion in *Newfield* and after the trial of this case. The court said:

"[A]lthough we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler,* [441 U.S. 369] 372-376 [60 L.Ed.2d 286, 99 S.Ct. 1755 (1979)] the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S. at 484-85.

We have reviewed the evidence as to the request for counsel in the light most favorable to the State. This is not a case in which the fact of a request for counsel is disputed. Unless the oft-repeated declarations of the courts about the rights of an accused to counsel, and the duty of police officers to scrupulously honor a request for counsel, are mere "perfunctory regurgitations," we must conclude that Carty's statements to Deputy Wilson were inadmissible. Further, in view of the fact that the case against Carty was not strong, but was one in which the evidence of guilt was considerably less than overwhelming, we hold that the admission of the statements was prejudicial error.

Defendant next contends that the trial court erred in admitting, over objection, testimony of his confession to an act of arson seven years earlier. The evidence was offered by the State solely for the purpose of proving motive. The State called as a witness Detective L. M. Haller of the Odessa, Texas, police department. Before his testimony began, the trial court cautioned the jury that he anticipated that the detective would testify that the defendant had committed another crime or civil wrong, and that this testimony might be considered by the jury solely for the purpose of proving the defendant's motive in connection with the charges upon which he was then on trial. The detective testified that he had investigated a lumberyard fire in Odessa, Texas, which occurred in 1973. He interviewed Carty on November 5, 1973, and the defendant admitted that he was the person who set the lumberyard on fire, saying that he did it "because he was depressed and down in the dumps."

K.S.A. 60-455 provides in substance that evidence of prior crimes is inadmissible to prove an accused's disposition to commit crime as the basis for an inference that he or she committed the crime charged. Such evidence, however, is admissible when relevant to prove some other material fact, including motive. In PIK Crim. 52.06 (1979 Supp.), we find the following discussion of *motive:*

"Motive may be defined as the cause or reason which induces action. While evidence of other crimes or civil wrongs may occasionally prove to be relevant to the issue of motive (*State v. Craig,* 215 Kan. 381, 382-383, 524 P.2d 679 [1974]), it is more often the case that the prior crime has no relevance to the issue. (See *e.g., State v. McCorgary,* 224 Kan. 677, 684-685, 585 P.2d 1024 [1978].) A prior crime would be relevant to the issue of motive where the defendant commited a subsequent crime to conceal a prior crime or to conceal or destroy evidence of a prior crime. It is not proper to introduce evidence of other crimes on the issue of motive merely to show similar yet unconnected crimes." p. 22.

In *State v. Craig,* 215 Kan. 381, 524 P.2d 679 (1974), the defendant was charged with aiding, abetting, and procuring another to swear falsely upon oath, in an application for a cereal malt beverage license, that a tavern would not be operated by a manager, when in fact Craig would be the manager. Craig had a prior conviction for promoting obscenity which made him ineligible; he could not secure a license in his own name nor was he eligible to serve as manager. We said:

"The establishment of defendant's prior conviction [of promoting obscenity]

was necessary to show the reason for his inability to secure a license in his own right and, thus, establishes his motive in procuring the assistance of Linda Bybee." 215 Kan. at 383.

Craig's motive to procure another to make a false application was his desire and need to conceal his prior crime, and thus the prior crime was relevant and admissible to prove motive, a contested issue.

In *State v. McCorgary,* 224 Kan. 677, 585 P.2d 1024 (1978), we held that proof of a similar murder (robbery, a brutal killing, the body buried in a shallow grave in a remote location) was not admissible for the purpose of establishing the motive for a killing which occurred eleven years earlier. The murders were unrelated and motive was not a contested issue.

In the case now before us, Carty was charged with arson under K.S.A. 21-3718(1)(*a*), knowingly, by means of fire, damaging the building of another without the consent of such other person. No charge was made under K.S.A. 21-3718(1)(*b*), committing arson with the intent to defraud an insurer. Motive was not an element of the offense charged. The Texas confession was not probative of any fact in issue in this case except Carty's propensity to set fires when depressed. One's disposition or propensity to commit a crime is not a material fact for which other crimes evidence is admissible; to the contrary, the statute expressly declares that such evidence is inadmissible for that purpose. As we said in *State v. Fennell,* 218 Kan. 170, 542 P.2d 686 (1975):

"Evidence of other wrongdoing which tends to show no more than a propensity or disposition to commit that wrong is expressly prohibited by K.S.A. 60-455." Syl. ¶ 1.

The issue here was whether or not Carty set the two fires charged, not whether he was depressed or exhilarated, sad or happy, when he did so. We conclude that motive was not substantially in issue, and that the trial court erred in admitting evidence of the arson in Texas for the sole purpose of establishing motive. Since the evidence of guilt is less than overwhelming, we cannot say that the erroneous admission of the other crimes evidence did not affect the substantial rights of the accused or that it is harmless error. See *State v. Bly,* 215 Kan. 168, 178-79, 523 P.2d 397 (1974); *State v. Fennell,* 218 Kan. 170, Syl. ¶ 2; *State v. Yates,* 220 Kan. 635, 556 P.2d 176 (1976); and *State v. Marquez,* 222 Kan. 441, 565 P.2d 245 (1977).

It has been suggested that the other crimes evidence is admissible in this case for the purpose of establishing intent. The majority of this court, however, concludes that intent is not substantially in issue. If the fires were started accidentally, as the State suggests, then the acts were not knowingly done as required by K.S.A. 21-3718, and there was no arson. If the fires were set intentionally, then the intent is obvious: to damage public buildings by fire.

Defendant also contends that the Texas confession was declared inadmissible by a Texas court and is therefore inadmissible here. We need not rule upon that claim, or upon the limitation of cross-examination by defense counsel of Detective Haller, since it is unlikely those issues will arise upon retrial.

For the reasons stated, the judgment is reversed and the case is remanded to the trial court with directions to grant a new trial.

FROMME, J., dissenting. Defendant's convictions on two separate and unrelated counts of arson are being set aside for two procedural errors which in my opinion were not of sufficient gravity to change the results of the trial.

The first concerned the admission of statements made by defendant during interrogation. Even if we accept the premise that defendant made a direct request for counsel and refused to talk without counsel, the statements made by him were not admissions of guilt and were nothing more than was established by other evidence of the facts and circumstances surrounding these two fires. His periods of depression were evident and his statements tended to support his defense rather than his guilt. He said he did not intentionally burn these buildings, and if he accidently set the fires he remembered nothing about such an accident. There may have been an inference that he could have set the fires and remembered nothing about it, but there was an equally strong inference that if he had set the fires he would have remembered doing so.

The second claimed error which forms the basis for reversal of these two convictions was evidence of the defendant's prior confession to a crime of arson, which confession was made seven years earlier. Evidence of this prior crime was admitted under authority of K.S.A. 60-455 which permits such introduction when relevant to prove some material fact such as motive, intent or several other possible issues in a trial of a defendant. Although

evidence of this former crime had no bearing on motive for committing the two crimes with which he was charged, it was relevant to establish the intent of the defendant. There was defendant's own testimony that during one of his periods of depression he might have accidently caused the fire and would not remember doing so. There was no direct evidence to establish how the fires started. His intent was in issue.

The case of *State v. McCorgary,* 224 Kan. 677, 585 P.2d 1024 (1978), cited in the majority opinion, is only one of many cases in which evidence of a prior crime has been admitted for the purpose of showing both motive and intent. We affirmed *McCorgary* and many similar cases because intent was relevant, even though motive was not. In the present case, the State failed to urge the admission of evidence of the prior offense on the ground of intent but I am sure on the new trial if there is evidence to infer an accidental setting of the fires the State will not have this same oversight again. In my opinion the result would have been the same without evidence of the prior arson. Defendant stood charged and was convicted of two separate unrelated arsons. Each separate conviction had some bearing on the other in the eyes of the jury.

In this case the Kansas harmless error rule (K.S.A. 60-2105) should be applied as recognized in *State v. Thompson,* 221 Kan. 176, Syl. ¶ 5, 558 P.2d 93 (1976). I would declare that these two procedural errors had little, if any, likelihood of having changed the result of the trial. I would declare such a belief beyond a reasonable doubt and affirm these convictions.

SCHROEDER, C.J., and McFARLAND, J., join in the foregoing dissent.