No. 83,430

STATE OF KANSAS, *Appellant/Cross-appellee,* v. JAMES W. GRAY, *Appellee/Cross-appellant.*

(18 P.3d 962)

Opinion filed March 9, 2001.

*Douglas A. Matthews,* assistant county attorney, argued the cause, and *Rick J. Scheufler,* county attorney, and *Carla J. Stovall,* attorney general, were with him on the briefs for appellant/cross-appellee.

*Michael S. Holland,* of Holland and Holland, of Russell, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

LARSON, J.: The State of Kansas appeals from the trial court's dismissal of charges against James W. Gray for driving under the influence of alcohol (DUI), K.S.A. 1999 Supp. 8-1567, and refusing to take a preliminary screening test (PBT) for alcohol concentration, K.S.A. 1999 Supp. 8-1012. Gray moved to suppress the evi-

dence of his breathalyzer refusal and for dismissal of the charges on factual grounds as well as on the application of collateral estoppel.

Prior to the hearing of the motions, the Kansas Department of Revenue had instituted proceedings against Gray to suspend his driving privileges because of his refusal to submit to the breathalyzer testing procedures. After losing at the administrative hearing, Gray appealed to the district court, where the administrative decision was overturned by Judge Barry Bennington, who found Gray had properly rescinded his initial refusal to take the breathalyzer test as allowed by *Standish v. Department of Revenue,* 235 Kan. 900, 683 P.2d 1276 (1984).

After hearing evidence regarding Gray's motions to suppress and dismiss the DUI and PBT refusal charges, Judge Hannelore Kitts declined to apply the doctrine of collateral estoppel and give effect to the result in the administrative appeal, but held that Gray had properly rescinded his refusal to take the breathalyzer test and dismissed both charges.

The State contends the trial court erred in ruling Gray did not refuse to take the test and in dismissing the complaint because other evidence of Gray's claimed impaired condition was available which was not subject to any motion.

Gray's cross-appeal contends Judge Kitts erred in her refusal to apply the doctrine of collateral estoppel to the ruling in the administrative appeal. Our jurisdiction is pursuant to K.S.A. 20-3018(c) (transfer on our own motion).

Although the legal effect is sharply contested, the parties are not in substantial disagreement concerning the facts giving rise to Gray's arrest and motions, which are as follows.

Hoisington Police Officer Justin Bailey stopped a motor vehicle after the bright headlights had not been dimmed and when the driver did not signal a turn. The vehicle was being driven under 5 miles an hour and was weaving.

When Officer Bailey approached the vehicle, Gray opened the door. The officer noticed a strong odor of alcohol and asked Gray for his driver's license and insurance information. Gray located his license and placed it in his lap but then continued thumbing

through his wallet. Believing that Gray was driving under the influence of alcohol, Officer Bailey arrested him. Officer Bailey did not mention in his testimony at the suppression hearing that he had asked Gray to take a PBT in order to determine whether the DUI arrest should be made.

Following his arrest, Gray was transported to the Barton County jail in Great Bend. Gray was processed into the facility and was handed a written copy of the implied consent advisory. When the officer completed orally reading the form to Gray, Gray was asked if he would submit to a breath test under K.S.A. 1999 Supp. 8-1001. Gray replied that he did not have his glasses with him and could not understand the form and wanted to speak with an attorney.

The officer reread a portion of the implied consent notice to Gray after advising him that an attorney could not be consulted regarding taking the test, but Gray reiterated that he wanted to speak with an attorney and again opined that because he could not read the form, he should not have to take the test.

Gray never told the officer that he could not understand what the officer was telling him or the provisions of the implied consent. The officer, at Gray's request, reread the form and Gray never specifically stated that he was refusing to submit to a breath test.

All told, the meeting between Officer Bailey and Gray took about 35 minutes. Finally, the officer determined that he considered Gray to have refused to submit to the breathalyzer testing and so marked the implied consent notice form. After being served with a copy of the form, Gray immediately stated to Officer Bailey, who was moving away from him, that he would take the test. The officer did not allow the test since Gray had been given several opportunities previously. Officer Bailey's impression was that Gray was trying to drag out the process in order to obtain a better result. The officer acknowledged that Gray's delay in deciding to take the test did not prejudice the evidence, that the equipment to perform the test was still present when Gray consented to take the test, that the test would have taken only 2 to 5 minutes to administer, that Gray had been under the officer's constant observation since his

arrest, and that all that Gray had to do was stand up and blow into the machine and wait for the reading result.

The hearing in which this contested dismissal took place was ready to commence as a hearing on a motion to suppress the evidence of Gray's refusal to take the breathalyzer test, but Gray's counsel orally moved to amend his motion to allege alternatively a motion in limine or to dismiss for the State's failure to allow the defendant to take the requested breathalyzer testing and for the court to take judicial notice of the decision in his administrative appeal. The State voiced no objection to the amendments.

Our standard of review of a trial court ruling on a motion to suppress has been stated as follows:

"[A]n appellate court reviews the factual underpinnings of a district court's decision 'by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review.' " *State v. Toothman*, 267 Kan. 412, 416, 985 P.2d 701 (1999) (quoting *State v. DeMarco*, 263 Kan. 727, Syl. ¶ 1, 952 P.2d 1276 [1998]).

Our standard for determining whether substantial competent evidence exists is well known as "evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *State v. Wonders*, 263 Kan. 582, 589, 952 P.2d 1351 (1998).

The motion to dismiss raises questions of statutory interpretation upon which our review is unlimited. *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998).

Although the trial court's factual findings are not a model of clarity, the holding was that the officer interpreted Gray's questions regarding the breathalyzer test as a refusal but that Gray then made a timely request and agreed to take the test. For that reason, the trial judge stated, "I believe that *Standish* applies here and that Mr. Gray agreed to take the test and the officer didn't give him the test."

Our holding in *Standish*, 235 Kan. 900, is directly applicable here. There, we examined whether a defendant may later withdraw his or her refusal to consent to a blood alcohol test. While Standish was found not to have properly rescinded his refusal, we set forth the following standards by which to review this question:

"An initial refusal to take a chemical test to determine the alcohol content of the blood of one arrested for driving while under the influence of alcohol may be changed or rescinded. To be effective, the subsequent consent must be made: (1) within a very short and reasonable time after the prior first refusal; (2) when a test administered upon the subsequent consent would still be accurate; (3) when testing equipment is still readily available; (4) when honoring the request will result in no substantial inconvenience or expense to the police; and (5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest." 235 Kan. 900, Syl. ¶ 1.

A review of the facts in our case shows that each of these elements were clearly met. The subsequent consent was given within a minute or less of when the officer checked the 'refusal' box on the consent form. The test would have still been within 2 hours of the original arrest and therefore still accurate. The testing equipment was still available. The test would have taken only 2 to 5 minutes from when Gray gave his consent. Gray was in the custody and under the observation of the arresting officer from the time of the arrest to the point of his subsequent consent.

There was clearly substantial competent evidence to support the trial court's finding that Gray had properly and timely, under the specific requirements of *Standish*, rescinded his refusal to take the breathalyzer test for blood-alcohol concentration, and the trial court's decision so finding must be affirmed.

While the State objected below to the dismissal of both charges, its arguments centered on its contention that Gray had actually refused to take the breathalyzer test. There is no question that Gray amended his motion to ask for dismissal of both charges, and after arguing *Standish's* applicability, further contended that the proper remedy was dismissal because the State failed to permit him to obtain exculpatory evidence, citing *State v. Clovis*, 248 Kan. 313, 807 P.2d 127 (1991); *State v. Carmichael*, 240 Kan. 149, 152, 727 P.2d 918 (1986), and two Arizona cases: *Smith v. Cada*, 114 Ariz.

510, 562 P.2d 390 (Ct. App. 1977); and *McNutt v. Superior Court of State of Ariz.*, 133 Ariz. 7, 648 P.2d 122 (1982). Gray's argument was based on the Arizona holding that constitutional standards of due process give a DUI suspect the right to obtain an independent blood test.

The trial court's dismissal was somewhat hesitant. After holding that *Standish* applied and requesting Gray's counsel to journalize the ruling, the judge was asked by defense counsel, "Are you agreeing to dismiss or just to suppress? What are you—we asked for a dismissal." The judge stated, "Well, I think we're going—yeah, I am going to grant the dismissal, also."

We next examine the question of whether the charge of refusing to submit to a preliminary screening breath test (PBT) for alcohol concentration, K.S.A. 1999 Supp. 8-1012, should have been dismissed.

It must be recognized that the tests which may be requested under K.S.A. 1999 Supp. 8-1012 and K.S.A. 1999 Supp. 8-1001 are completely separate in purpose, usage, and legal effect.

The applicable portions of K.S.A. 1999 Supp. 8-1012 state that if a person submits to the test when requested, the results of a PBT "shall be used for the purpose of assisting law enforcement officers in determining whether an arrest should be made and whether to request the tests authorized by K.S.A. 8-1001 and amendments thereto. A law enforcement officer may arrest a person based in whole or in part upon the results of a preliminary screening test."

K.S.A. 1999 Supp. 8-1012 additionally states: "Refusal to take and complete the test as requested is a traffic infraction."

The recent case of *Gross v. Kansas Dept. of Revenue*, 26 Kan. App. 2d 847, Syl. ¶ 2, 994 P.2d 666 (2000), discusses the usage of a PBT as "an unobtrusive test given in conjunction with other field sobriety tests to determine probable cause to arrest for driving under the influence."

The results of a PBT have greatly limited application in that they are "not admissible in any civil or criminal action except to aid the court or hearing officer in determining a challenge to the validity of the arrest or the validity of the request to submit to a test pur-

suant to K.S.A. 8-1001 and amendments thereto." K.S.A. 1999 Supp. 8-1012.

The extensive provisions of K.S.A. 8-1001 *et seq.* allow the evidentiary testing of individuals who have been arrested for DUI or involved in a vehicle accident. The Kansas Implied Consent statutes require that the person to be tested be given the oral and written notices set forth in K.S.A. 1999 Supp. 8-1001(f)(1). After compliance with statutory requirements, if a test is administered with results over the specified legal limit, or if a test is refused, a person's driving privileges are subject to suspension and restrictions as provided in K.S.A. 1999 Supp. 8-1002 and K.S.A. 1999 Supp. 8-1014. Test results are admissible in evidence at any trial, as are test refusals. Pursuant to K.S.A. 1999 Supp. 8-1013(h) and (i), the definitions of "test failure" and "test refusal" clearly do not include the PBT for purposes of evidentiary alcohol testing under the implied consent statutes.

When Gray amended his suppression motion to also ask for dismissal, his counsel stated "the *actions* should be dismissed" (emphasis added), which we take to mean both charges.

Although the hearing was not a trial, with both charges subject to dismissal, the record submitted to us contains no showing that Gray was ever requested to take a PBT. Based on Officer Bailey's testimony, the DUI arrest was made solely upon his driving observations and view of Gray at the vehicle. It may have been presumed that a K.S.A. 1999 Supp. 8-1012 charge could be sustained based on the State's claim that Gray refused the test after his arrest, but the comparison of the two statutes set forth above shows that such is not permissible.

With no evidence of a PBT being requested and evidence showing that the arrest was made without its involvement, the trial court's dismissal of the K.S.A. 1999 Supp. 8-1012 charge must be affirmed.

Whether the motion to dismiss the DUI charge should have been granted is the more difficult issue in this appeal.

The trial court did not articulate any reason for dismissing the DUI charge. However, the argument Gray made was that he was denied the right to take a breathalyzer test that might have been

favorable, which therefore resulted in a due process and constitutional violation. This can only be assumed to be the reasoning behind the trial court's ruling. The State did not argue below that it had other evidence sufficient to sustain the DUI charge, which it now does on appeal.

In addressing this issue, we first point out that Gray's reliance on *Clovis* to require dismissal under these facts is misplaced. *Clovis* does not hold that a defendant must be dismissed for failure of the State to provide exculpatory evidence but rather the dismissal in *Clovis* was based entirely upon the failure of the State to follow a discovery order and the trial court's dismissal was granted under K.S.A. 22-3212. 248 Kan. at 329-31.

Likewise, reliance on *Carmichael* as requiring dismissal is a stretch of a holding that "prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant." 240 Kan. at 152. While stating that a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is material to the guilt or innocence and suppression of such evidence is a violation of the defendant's Fourteenth Amendment Due Process rights, citing *Brady v. Maryland*, 373 U.S. 83, 86-87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), the *Carmichael* decision does not support Gray's arguments or the trial court's decision.

The decisions in the two Arizona cases are, however, more directly applicable although they dealt with an accused being unable to obtain an independent blood alcohol test. *Cada* states in its syllabus:

"Refusal of State to allow accused, who was arrested and charged with, inter alia, driving motor vehicle while under influence of liquor and who offered sufficient funds to be released under master bail schedule but who was not released until more than seven hours after arrest, to contact his attorney and immediately secure bail for express purpose of permitting accused to obtain independent blood test for purpose of establishing his sobriety denied accused's due process right to a fair trial. [Citations omitted.]" 114 Ariz. 510, Syl. ¶ 2.

The *McNutt* case was heard by the Arizona Supreme Court, which held: "Dismissal of the case with prejudice is the appropriate remedy because the state's action foreclosed a fair trial by pre-

venting petitioner from collecting exculpatory evidence no longer available." 133 Ariz. at 10.

Gray now cites on appeal decisions from Alaska and Montana to buttress his arguments.

The State now counters its objection to the dismissal order by pointing to two Court of Appeals cases, *Ostmeyer v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 639, 827 P.2d 780, *rev. denied* 250 Kan. 806 (1992), and *State v. Kelly*, 14 Kan. App. 2d 182, Syl. ¶ 3, 786 P.2d 623 (1990).

In *Kelly*, the defendant had invoked but was denied his right to consult with his attorney in violation of K.S.A. 8-1001(f)(1)(E). The Court of Appeals reasoned, after recognizing that the statute was silent as to the sanction to be imposed,

"The statute does address, however, sanctions for failure to allow an independent test. K.S.A. 1987 Supp. 8-1004 states:

'Without limiting or affecting the provisions of K.S.A. 8-1001 and amendments thereto, the person tested shall have a reasonable opportunity to have an additional test by a physician of the person's own choosing. In case the officer refuses to permit such additional testing, the test administered pursuant to K.S.A. 8-1001 and amendments thereto shall not be competent in evidence.'

"In *State v. George*, 12 Kan. App. 2d 649, 652, 754 P.2d 460 (1988), this court restated the clear meaning of this statute: 'If the suspect is not given the opportunity for additional testing, the State's test is not competent in evidence.'

"Although defendant argues that dismissal of the charge is the appropriate remedy for violation of 8-1001(f)(1)(E), we conclude a new trial with suppression of the breath test and any evidence obtained following defendant's request for counsel after the breath test is the proper remedy.

"Although we have found no case directly on point, the most closely analogous cases are those concerning statements obtained in violation of *Miranda*. In those cases, the Kansas Supreme Court has held such statements inadmissible. In *State v. Boone*, 220 Kan. 758, 768, 556 P.2d 864 (1976), the court ruled as inadmissible in the prosecution's case in chief '[a]ppellant's statement elicited after he stated he wanted to see his attorney.' See *State v. Carty*, 231 Kan. 282, 644 P.2d 407 (1982)." 14 Kan. App. 2d at 191.

Although the primary issue was whether *Kelly* and *Barnhardt v. Kansas Dept. of Revenue*, 243 Kan. 209, 755 P.2d 1337 (1988), should be given retroactive effect, our court in *State v. Luft*, 248 Kan. 911, 913, 811 P.2d 873 (1991), approved and applied the ruling of *Kelly*.

The facts were similar in the *Ostmeyer* case, where the officer who administered the breath test did not allow Ostmeyer to contact counsel after completion of the breath test. The Court of Appeals held: "Suppression of the test results and any evidence obtained following a request for counsel is the proper remedy in subsequent criminal and administrative proceedings." 16 Kan. App. 2d 639, Syl. *Kelly* and *Luft*, as well as the earlier opinion of *Barnhardt* were applied and relied on in *Ostmeyer*, 16 Kan. App. 2d at 643-45.

We are hard pressed to see why a different rule should be applied to the facts we face in the instant case than was applied in *Kelly* and *Ostmeyer* and previously approved by our court in *Luft*. There is a factual difference in that here it was the State's test that was not taken, while in the earlier Court of Appeals fact situations, the denials resulted in the inability to take an independent test. We do not see how this should result in the more harsh rule of dismissal where the previous rule of suppression has been applied.

Gray does point in his brief to the observation from *Popp v. Motor Vehicle Department*, 211 Kan. 763, 767, 508 P.2d 991 (1973), that "the chemical tests provided for in 8-1001 eliminate mistakes which may arise from objective observation alone." This is undoubtedly true. We point out that Gray had been offered several opportunities to be tested, and in addition there is no showing that he was precluded from obtaining his own test. Our ruling in *Standish v. Department of Revenue*, 235 Kan. 900, Syl. ¶ 1, 683 P.2d 1276 (1984), should not be unduly extended.

Even with the fact admitted that a test should have been given, we still hold to our previous rulings that the proper remedy is suppression and not dismissal of all charges. The facts here are sufficiently like those of *Kelly* and *Ostmeyer*, which this court approved in *Luft*, to require the same result.

The trial court correctly ruled that *Standish* required a holding that Gray rescinded his refusal to take a breathalyzer test. Because of the result we have reached, it is not necessary to consider or comment on the collateral estoppel issue raised by the cross-appeal.

The trial court erred in dismissing the DUI charge under K.S.A. 1999 Supp. 8-1567, but the motion to suppress or motion in limine

should have been granted, precluding any reference to the breath-alyzer testing proceedings. The charge of refusal to submit to a PBT under K.S.A. 1999 Supp. 8-1012 was properly dismissed.

Affirmed in part, reversed in part, and remanded.