(99 P.3d 635)
No. 91,668

CITY OF DODGE CITY, *Appellant*, v. LEROY WIPF, *Appellee*.

Opinion filed July 30, 2004.

*Terry J. Malone*, of Williams, Strobel, Malone & Ralph, P.A., of Dodge City, for the appellant.

*Leslie A. Hess* and *Laura H. Lewis*, of Dodge City, for the appellee.

Before GREENE, P.J., MCANANY, J., and BRAZIL, S.J.

BRAZIL, J.: After Leroy Wipf was convicted in municipal court of driving under the influence (DUI), he appealed his conviction to the district court. The district court granted Wipf's motion to suppress his blood test results, and the City of Dodge City appeals. We affirm.

At approximately 3:30 a.m., Officer Michael Coil arrested Leroy Wipf for DUI. Coil transported him to the police station for the purpose of administering an Intoxilyzer 5000 breath test. While walking toward the testing room but before entering the room, Wipf told Coil he was going to refuse any testing. Based on this information, Coil transported Wipf to the detention center, intending to complete paperwork and give Wipf another opportunity to submit to the breath test.

At the detention center, Coil read Wipf the implied consent advisory. After Coil read the provision stating that Wipf could con-

sult with an attorney after testing, Wipf said, "I want to call my lawyer." Coil told him he could do so after the testing. After Coil finished reading the implied consent advisory, he asked Wipf to submit to a breath test. Wipf again refused but requested a blood test. Coil told him they would wait 20 minutes for observation, as required for the Intoxilyzer, and if Wipf still refused to submit to a breath test he could submit to a blood test at that time. After 20 minutes, Wipf still refused to submit to the breath test and again requested a blood test. Coil then transported Wipf to the hospital, where his blood was drawn. Wipf was in handcuffs during this time.

While en route back to the detention center, Wipf asked to call his attorney. Coil told him the jailers would let him use a phone at the detention center. After arriving at the detention center, Coil delivered Wipf to the custody of the jailers and left at approximately 6 a.m. Before leaving, he did not hear any conversation regarding Wipf's desire to contact an attorney.

Wipf testified the jailer told him he could not call anyone from the detention center. Wipf also testified he did not remember asking the jailer for an opportunity to call an attorney. The jailer testified that Wipf was uncooperative during the booking process and that Wipf refused to sign documents because "he wanted to speak to an attorney." The jailer stated, "[I]f I remember, he didn't want to sign anything without speaking to an attorney." Wipf was released from the detention center at approximately 9:30 a.m.

Wipf was convicted in municipal court of DUI. On appeal to the district court, Wipf filed a motion to suppress arguing, *inter alia,* that while in custody, his request to call an attorney was denied and, therefore, his blood test results should be suppressed. After a hearing on the motion, the district court suppressed Wipf's blood test results, finding Wipf expressed a desire to contact an attorney after the blood test was administered and this request was improperly denied. The City filed a notice of interlocutory appeal.

The material facts are undisputed. When the facts material to a district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which this court has unlimited review. *State v. Boyd,* 275 Kan. 271, 273, 64 P.3d 419 (2003).

Interpretation of statutes is a question of law, and this court's review is unlimited. *State v. Maass,* 275 Kan. 328, 330, 64 P.3d 382 (2003). The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Williamson v. City of Hays,* 275 Kan. 300, 305, 64 P.3d 364 (2003). In construing statutes and determining legislative intent, this court must construe the provisions of statutes together and must attempt to reconcile and bring them into workable harmony. *State v. Brown,* 272 Kan. 843, 847, 35 P.3d 910 (2001). Furthermore, criminal statutes must be strictly construed in favor of the accused. "Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute." *State v. McGill,* 271 Kan. 150, 154, 22 P.3d 597 (2001).

Kansas has enacted an implied consent statute, which states in part:

"Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 8-1001(a).

The person has no constitutional right to consult with an attorney regarding whether to submit to testing. K.S.A. 8-1001(f)(C). However, "after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities and physicians." K.S.A. 8-1001(f)(I).

In suppressing Wipf's blood test results, the district court relied on *State v. Kelly,* 14 Kan. App. 2d 182, 786 P.2d 623 (1990). Kelly was arrested for DUI, after which Trooper Bostian read him the implied consent advisory and asked him to submit to a breath test. Kelly refused unless his attorney was present. However, after Kelly was told he did not have the right to consult with his attorney at that point, he agreed to be tested because he believed he could consult with his attorney after he submitted to testing.

After completing the breath test, Kelly requested a blood test and to see his attorney. While en route to the hospital, Kelly asked

Trooper Bostian several times to have his attorney present during the blood test and at least once stated he was being denied his right to communicate with his attorney. Kelly, who was handcuffed at the time, asked both Bostian and a physician to call his attorney for him.

In reviewing the district court's denial of Kelly's motion to suppress, this court held:

"[A]fter submitting to the breath test, defendant said several times that he wanted his attorney present when the blood test was administered, or that he was being denied his right to communicate with his attorney. Construing the statute in favor of the accused and against the State, defendant's requests were sufficient to invoke his statutory right to consult with an attorney." 14 Kan. App. 2d at 189.

This court further held that the right to consult with an attorney is not limited solely to determining whether to take an additional test. 14 Kan. App. 2d at 189. Finally, the court held that the sanction imposed for denial of the right to consult with an attorney under K.S.A. 1987 Supp. 8-1001(f)(1)(E), now K.S.A. 8-1001(f)(I), is suppression of the evidence. 14 Kan. App. 2d at 191-92.

In this case, the City argues that because Wipf refused to submit to the breath test, his right to consult with an attorney pursuant to K.S.A. 8-1001(f)(I) was not invoked. The City argues that *Kelly* is inapplicable because in that case, the defendant completed the breath test and, therefore, had the right to an attorney under K.S.A. 8-1001(f), while in this case Wipf never submitted to the breath test. The City contends that under K.S.A. 8-1001(f)(I), a driver must complete the testing offered by the law enforcement officer before the right to counsel is invoked.

Wipf argues he submitted to a blood test while in police custody and the City intended to use the results of that test against him; therefore, after completion of the testing, he had the right to consult with an attorney under K.S.A. 8-1001(f)(I). Alternatively, Wipf argues that in giving him the blood test, Coil violated K.S.A. 8-1001(h), which provides in part:

"If the person refuses to submit to and complete a test as requested pursuant to this section, additional testing shall not be given unless the certifying officer has probable cause to believe that the person, while under the influence of alcohol

or drugs, or both, has operated a vehicle in such a manner as to have caused the death of or serious injury to another person."

In response to Wipf's arguments, the City contends that the blood test, administered after Wipf refused the breath test, was an *independent* test requested by Wipf and, therefore, the right to consult with an attorney was not invoked.

Neither the district court nor the parties discussed *State v. Gray,* 270 Kan. 793, 18 P.3d 962 (2001). Although the facts underlying this decision are somewhat distinguishable from Wipf's case, *Gray* is helpful nonetheless. Gray was arrested for DUI and transported to the police station where Officer Bailey read him the implied consent advisory. Thereafter, Gray told Bailey he did not have his glasses and, therefore, could not read the advisory form. He also requested to speak with an attorney. Bailey reread a portion of the form after telling Gray that he could not consult with an attorney regarding taking the test. Gray again requested to speak with an attorney. Upon Gray's request, Bailey reread the form.

Although Gray never specifically stated he was refusing to submit to a breath test, Bailey determined that Gray had refused and so marked the implied consent form. After being served with a copy of the form, Gray immediately stated he would take the test. Bailey did not allow the test because Gray had been given several opportunities previously.

Gray was later charged with DUI and refusing to submit to a preliminary screening test. The district court dismissed the charges, holding he had properly rescinded his refusal to take the breath test as allowed by *Standish v. Department of Revenue,* 235 Kan. 900, 683 P.2d 1276 (1984). In concluding Gray had properly rescinded his initial refusal, the Kansas Supreme Court set forth the standards by which courts must review whether a defendant may later withdraw his or her refusal to consent to a blood alcohol test:

" 'An initial refusal to take a chemical test to determine the alcohol content of the blood of one arrested for driving while under the influence of alcohol may be changed or rescinded. To be effective, the subsequent consent must be made: (1) within a very short and reasonable time after the prior first refusal; (2) when a test administered upon the subsequent consent would still be accurate; (3) when

testing equipment is still readily available; (4) when honoring the request will result in no substantial inconvenience or expense to the police; and (5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest.' [*Standish,*] 235 Kan. 900, Syl. ¶ 1." *Gray,* 270 Kan. at 797.

A review of the facts of this case shows that each of the *Standish* elements was met. Wipf initially refused testing at the police station. His subsequent consent to blood testing was given immediately after Coil read the implied consent advisory at the detention center. The test was administered within 2 hours of the original arrest and, therefore, still accurate. Although the blood testing equipment was not "readily available" at the detention center, Coil was willing and able to transport Wipf to the hospital, where such equipment was readily available. The testing, including the trip to and from the hospital, took less than 2 hours. There is no indication in the record that the police bore the expense of the test. In fact, Coil testified in somewhat vague terms that Wipf handled matters with the hospital. Finally, Wipf was in Coil's custody and under observation for the whole time since arrest. See *Gray,* 270 Kan. at 797; *Standish,* 235 Kan. 900, Syl. ¶ 1.

Although Wipf initially refused to consent to any blood alcohol testing at the police station, he later withdrew this blanket refusal at the detention center by consenting to a blood test. Although K.S.A. 8-1001(h) provides that "the selection of the test or tests shall be made by the officer," Coil acquiesced in and facilitated the administration of the blood test. Under the plain language of K.S.A. 8-1001(f)(I), which must be construed in Wipf's favor, Wipf had the right to consult with an attorney after completion of the testing. The remedy for a violation of K.S.A. 8-1001(f)(I) is suppression of the evidence. *Kelly,* 14 Kan. App. 2d at 192. Therefore, the district court did not err in suppressing Wipf's blood test results.

Affirmed.