NOT DESIGNATED FOR PUBLICATION

Nos. 121,134
121,135

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TYRA L. PARSONS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed March 20, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Sherri L. Becker*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

PER CURIAM:  Tyra L. Parsons appeals the district court's finding that she absconded from supervision while on probation. Based on that finding, the district court revoked Parsons' probation and ordered her to serve her underlying prison sentence without first serving an intermediate sanction. Parsons argues that the State presented insufficient evidence to show that she was an absconder. Finding substantial competent evidence supports the district court's ruling, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On March 21, 2018, Parsons pled guilty in case No. 2018 CR 42 to one count each of conspiracy to possess methamphetamine and use of a telecommunication facility to facilitate a controlled substance transaction. The district court sentenced Parsons to 9 months' imprisonment but granted an 18-month term of probation.

On June 28, 2018, the State filed a motion to revoke Parsons' probation on grounds that she had failed to (1) make required payments associated with her case, (2) report to her intensive supervision officer (ISO) as directed, (3) submit to a scheduled drug evaluation, and (4) report a change of address to her ISO.

On July 20, 2018, Parsons appeared before the district court, where she admitted to violating the terms of her probation. As a result, the district court ordered Parsons to serve a three-day "quick dip" in the county jail. At this same hearing, Parsons pled no contest in case No. 2018 CR 236 to a single count of possession of methamphetamine. The district court sentenced Parsons to 20 months' imprisonment and granted an 18-month term of probation, subject to mandatory drug treatment under Senate Bill 123.

On February 8, 2019, the State moved to revoke Parsons' probation in both cases. The State alleged that Parsons had (1) failed to make required payments associated with the cases, (2) absconded from supervision by failing to report for scheduled meetings and failing to respond to a letter instructing her to report to community corrections, (3) failed to obtain employment, (4) tested positive for methamphetamine on multiple occasions, (5) failed to pay monthly supervision fees to community corrections, and (6) failed to complete the Senate Bill 123 drug treatment program or make required payments toward the costs of the treatment.

After Parsons failed to appear at a probation revocation hearing on March 15, 2019, the district court issued a bench warrant for her arrest. Parsons later appeared at a hearing on March 29, 2019, where she stipulated to all the State's allegations except for the absconding allegation.

Cathy Crockett, Parsons' ISO in both cases, provided the following relevant testimony. Crockett explained that the Kansas Department of Corrections defined an absconder as an offender who has had no contact with a community corrections officer within 10 business days of the offender's last visit to the office. Crockett provided the following timeline of events that caused Parsons to be labeled an absconder:

- December 11, 2018:  Parsons did not attend a scheduled appointment with Crockett.
- December 28, 2018:  Parsons reported to Crockett.
- January 2, 2019:  Parsons did not attend a scheduled appointment with Crockett. When Crockett attempted to call Parsons, the phone number provided by Parsons was no longer active.
- January 11, 2019:  The foster mother of Parsons' children contacted the community corrections office and advised that Parsons had moved to an unknown address in St. Joseph, Missouri. The foster mother was told to have Parsons contact the office. Parsons did not do so.
- January 22, 2019:  Crockett mailed a letter to Parsons' last known address. The letter was never returned. Parsons did not contact the office anytime thereafter.

Crockett testified that the conditions of probation required an offender to notify community corrections of any change of address or phone number. Crockett further testified that an offender on probation could not move to another state without prior approval. Crockett reiterated that she had received no communication from Parsons, that she was unable to contact Parsons by phone or letter, and that no one had contacted her

on Parsons' behalf to explain Parsons' lack of communication. Crockett also noted that Parsons had only attended a couple of meetings in the seven months since the court ordered her to complete drug treatment under Senate Bill 123. On cross-examination, the following exchange occurred between defense counsel and Crockett:

"Q: [I]s it your belief that [Parsons] was intentionally hiding from you or consciously trying to evade you or did she just fall off the wagon and started making bad decisions about reporting and the like[?]
"A: I can't make that determination for her. I don't know what was going on in her mind. But she was using at that time. But she was also not reporting. So I wasn't talking to her. So I do not know."

Following Crockett's testimony, defense counsel asked the district court to make a finding that Parsons was not an absconder and requested a 180-day prison sentence as an intermediate sanction so Parsons could address her substance abuse issues. Counsel agreed that Parsons "f[e]ll off the wagon" and "stopped doing what she was supposed to be doing." But counsel argued that "there was [no] conscious intent to hide from or otherwise evade the legal process." The district court judge responded, "Zero evidence as to that issue. The only issue is that her whereabouts were unknown, that she's made no attempt to contact, and that Community Corrections had no ability to contact her. To suggest what the reason is for that, there is no evidence."

The district court ultimately determined that "this is as clear a case of absconding as could be," finding that Parsons had "just disappeared" and had made no effort to contact community corrections or otherwise inform the office of her whereabouts. Based on Parsons' earlier stipulations and the evidence presented, the district court revoked Parsons' probation in both cases. Noting that Parsons was not eligible for an intermediate sanction due to her status as an absconder, the court ordered her to serve the underlying prison sentence in each case concurrently.

On appeal, Parsons claims the State failed to present sufficient evidence to establish that she was an absconder. As a result, Parsons contends that the district court lacked authority to bypass the intermediate sanctions set forth in K.S.A. 2018 Supp. 22-3716 and impose her underlying prison sentence.

Generally, once there has been evidence of a violation of the conditions of probation, the decision to revoke probation rests in the district court's sound discretion. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Parsons does not challenge the district court's authority to revoke her probation. Instead, she takes issue with the sentence imposed by the court. Whether the district court properly imposed a sentence after revoking Parsons' probation is a question of law over which an appellate court exercises unlimited review. See *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015).

Historically, district courts had broad authority to sanction an offender who violated the terms of his or her probation. *State v. Dooley*, 308 Kan. 641, 647, 423 P.3d 469 (2018). The Legislature limited that authority in K.S.A. 2018 Supp. 22-3716. These limitations also apply to Senate Bill 123 defendants such as Parsons. See K.S.A. 2018 Supp. 21-6824(f)(2); K.S.A. 2018 Supp. 21-6604(n)(2). At the time of Parsons' probation revocation, the district court was required to impose an intermediate sanction when an offender on probation or community corrections violated the terms of his or her probation or assignment. See K.S.A. 2018 Supp. 22-3716(c); *State v. Huckey*, 51 Kan. App. 2d 451, 454, 348 P.3d 997 (2015). Intermediate sanctions included a 2- or 3-day sanction of confinement in a county jail, a 120-day prison sanction, or a 180-day prison sanction. See K.S.A. 2018 Supp. 22-3716(c)(1)(B), (C), (D). Under these limitations, the district court could revoke probation and order a violator to serve the balance of his or her original

sentence only after both a jail sanction and a prison sanction had been imposed. See K.S.A. 2018 Supp. 22-3716(c)(1)(E).

Relevant to this appeal, certain exceptions allowed a district court to revoke a defendant's probation and impose the original sentence without having previously imposed the statutorily required intermediate sanctions. One of those exceptions allowed the district court to revoke probation when the defendant absconded from supervision. See K.S.A. 2018 Supp. 22-3716(c)(8)(B). Simply failing to report to a supervising officer does not equate to absconding. See *Huckey*, 51 Kan. App. 2d at 458. Our Supreme Court has defined absconding to mean that an offender "engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process." *Dooley*, 308 Kan. 641, Syl. ¶ 4. The court clarified:

> "Evading the legal process of the court includes the offender's conduct in intentionally avoiding probation supervision, for example, by intentionally avoiding detection by one's probation officer. In determining whether an offender has 'abscond[ed] from supervision,' district courts must consider whether the offender's
>> 'acts show the intent that inheres in the definitions of "abscond"—not simply that the [offender] failed to attend one meeting with a probation officer or could not be located for a brief period of time, but that the [offender] sought to "evade the legal process of a court by hiding within or secretly leaving the jurisdiction.' [Citations omitted.]" *Dooley*, 308 Kan. at 657.

To invoke the absconder bypass of K.S.A. 2018 Supp. 22-3716(c)(8)(B), the State has the burden to prove by a preponderance of the evidence that a probationer absconded. *Dooley*, 308 Kan. at 655; *Huckey*, 51 Kan. App. 2d at 457. The district court must base its finding that a probation violator absconded on substantial competent evidence. Substantial evidence means legal and relevant evidence that a reasonable person would find adequate to support a conclusion. *State v. Gray*, 270 Kan. 793, 796, 18 P.3d 962

6

(2001). We generally give great deference to the factual findings of the district court and we do not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in the evidence. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

Parsons argues that the State presented no evidence to show that she had a conscious intent to hide from or evade the legal process. For support, Parsons relies on (1) Crockett's testimony that she did not know whether Parsons was intentionally hiding from or consciously trying to evade supervision and (2) the district court's comment to defense counsel that "[z]ero evidence" had been presented on the issue of Parsons' intent to hide from or evade the legal process. Parsons claims that the district court's comment reflects a misunderstanding of how an absconder is defined in *Dooley*.

Parsons' argument misinterprets the "conscious intent" language in *Dooley*. An offender's conscious intent to hide from or otherwise evade the legal process may be established by circumstantial evidence, which includes the offender's actions and inactions. See *Dooley*, 308 Kan. 641, Syl. ¶ 4. Direct proof of an offender's subjective intent is not required. Crockett's testimony simply reflects that she did not know whether Parsons was intending to hide from community corrections or evade supervision. Likewise, the district court's comment that "[z]ero evidence" had been presented on the issue of Parsons' intent to hide from or evade the legal process does not reflect a misunderstanding of the *Dooley* court's definition of an absconder. When read in context, the district court's comment is simply an acknowledgment that there was no direct evidence of Parsons' reasons for terminating contact with community corrections.

Regardless of Parsons' subjective intent, however, her actions are circumstantial evidence from which we can draw a reasonable conclusion that she intended to hide from or otherwise evade the legal process. This is not a case where Parsons simply failed to attend one meeting with a probation officer or could not be located for a brief period of time. See *Dooley*, 308 Kan. at 657. Parsons had a duty to report to community corrections

7

and failed to do so beginning on January 2, 2019. Parsons also had a duty to advise community corrections of any change in address or phone number. When Crockett tried to call Parsons, the phone number she had was no longer active. And Parsons did not respond to a January 22, 2019 letter Crockett mailed to her last known address. Finally, Parsons was not to allowed to leave the state of Kansas. Parsons did not inform Crockett that she intended to move to St. Joseph, Missouri, or otherwise try to obtain permission to do so. In fact, Crockett only learned that Parsons was in Missouri after the foster mother of Parsons' children contacted the community corrections office. These facts create a permissible inference that Parsons purposely chose to evade the legal process of the district court by secretly leaving the jurisdiction. See 308 Kan. at 657.

We find substantial competent evidence supports the district court's finding that Parsons absconded from supervision. As a result, the district court properly bypassed intermediate sanctions and imposed her underlying prison sentence. See K.S.A. 2018 Supp. 22-3716(c)(8)(B).

Affirmed.