NOT DESIGNATED FOR PUBLICATION

No. 111,962

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENNETH E. WILSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Osborn District Court; PRESTON A. PRATT, judge. Opinion filed September 4, 2015.  Affirmed.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, for appellant.

*Lee J. Davidson*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER and GARDNER, JJ.

*Per Curiam*:  Wilson, convicted of premeditated first-degree murder and other crimes, appeals from the district court's denial of his K.S.A. 60-1507 motion which alleged that his trial counsel was ineffective for having failed to file a motion to suppress. To establish ineffective assistance of counsel Wilson must establish prejudice, meaning that there is a reasonable probability the jury would have reached a different result absent counsel's deficient performance. Because Wilson fails to establish such prejudice, we affirm the denial of his K.S.A. 60-1507 motion.

*Nature of the case*

A jury convicted Kenneth E. Wilson of premeditated first-degree murder, aggravated burglary, burglary, and criminal possession of a firearm. The district court sentenced Wilson to life imprisonment plus 158 months. Wilson filed a direct appeal of his criminal case, and the Supreme Court affirmed. See *State v. Wilson*, 295 Kan. 605, 289 P.3d 1082 (2012). The underlying facts are fully set forth in that direct appeal, and we see no need to repeat them here.

Wilson then sought relief under K.S.A. 60-1507, and the district court held a preliminary hearing on the motion. The district court summarily dismissed all issues but one—whether Wilson's trial counsel was ineffective for having failed to file a motion to suppress.

Wilson's primary argument was that his counsel was deficient in not moving to suppress numerous items which had been seized from his residence but had not been listed in the search warrant. An evidentiary hearing was held at which KBI agents, law enforcement officers, and Wilson's trial attorney testified. Wilson was represented by stand-by counsel at that hearing after expressing his desire to represent himself. After considering the testimony and reviewing the exhibits, the district court took the motion under advisement and later issued a written decision denying Wilson's K.S.A. 60-1507 motion.

The district court applied the proper two-prong test to determine whether Wilson's trial counsel was ineffective. The district court found that Wilson's counsel's decision not to file a motion to suppress was reasonable, that the challenged items which were admitted at trial had been legally seized pursuant to the plain view exception to the warrant requirement, that there was not a reasonable probability that the motion to suppress would have been granted, and that Wilson failed to show trial counsel's

performance was deficient. The court never reached the question whether there was a reasonable probability that the outcome of the trial would have been different if the motion to suppress had been filed and granted.

*Did the district court err by denying the 60-1507 motion?*

Wilson contends the district court erred by finding that he failed to show his trial counsel was ineffective. Wilson claims his trial counsel's performance was deficient because he failed to file a motion to suppress evidence seized during the execution of the search warrant because the warrant was not sufficiently particular and many items seized were not listed in the warrant.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. Consequently, we review the underlying factual findings for support by substantial competent evidence and the legal conclusions based on those facts de novo. *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014).

We apply the familiar two-pronged *Strickland* analysis to analyze the merits of a claim of ineffective assistance of counsel. See *Sola-Morales v. State*, 300 Kan. 875, 882 335 P.3d 1162 (2014). To establish ineffective assistance of counsel the defendant must establish (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) "prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." 300 Kan. at 882-83; *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015); see *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). Reasonable probability means a probability sufficient to undermine confidence in the outcome. *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014).

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive. See *Smith v. Robbins*, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) . "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Robbins*, 528 U.S. at 286 n.14 (quoting *Strickland*, 466 U. S. at 697). Thus "this court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve." *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001).

We choose to address the prejudice prong first, even though the district court relied solely on the performance prong. See *State v. May*, 293 Kan. 858, 870, 269 P.3d 1260 (2012) (finding the basis for district court decision immaterial if the result is correct for any reason); *State v. Irby*, No. 109,077, 2014 WL 1096638,*5 (Kan. App. 2014) (unpublished opinion) (denying Irby's K.S.A. 60-1507 motion and affirming the district court's denial of the motion as correct, though for a different reason). We therefore review *Strickland's* prejudice inquiry de novo. See *Smith v. Gibson*, 197 F.3d 454, 461 (10th Cir. 1999), *cert. denied*, 531 U.S. 839 (2000); *Romano,* 239 F.3d at 1172. In so doing, we do not intend to imply anything about counsel's performance – we simply choose not to address that matter.

*Prejudice*

Wilson concedes that police officers obtained a valid search warrant for his residence, and that various items seized from his residence were adequately described in the warrant: Items 1, 10, 11, 12, 13, 14, 18, 20, 21, and 26. Although Wilson challenges the seizure of numerous other items, the following Items were not admitted into evidence at his trial, so he could not have suffered prejudice from his counsel's failure to move to

suppress them: Items 2, 3, 4, 5, 6, 7, 9, 15, 16, 23, and 24. This leaves for our consideration Items 8, 17, 19, 22, and 25, which were admitted at trial.

Item 8 consisted of United States savings bonds which Undersheriff Troy Schaefer found in a stack of paperwork located under a pile of clothing on the floor of Wilson's bedroom. The bonds were found inside an envelope and contained a name and address of someone who did not reside in the home.

Item 17 consisted of a black case containing 24 compact discs, and a black and blue case containing 122 compact discs. Officers found these in the dining room of Wilson's residence, on top of a filing cabinet next to a computer desk. Three of the compact discs inside the cases were marked "T. Pope," and the search warrant listed "documentation identifying Terry and/or Tara Pope."

Item 19 was a brown lockbox which contained plastic bags with over 150 pieces of jewelry in them, including some imitation pearl necklaces and a fake gold coin pendant matching the description of one stolen from Elinor Fink.

Item 22 was a green fishing bag or fanny pack found in the basement of Wilson's residence. It contained a 1-gallon bag of assorted watches, and a grey cloth bag which also had wrist and pocket watches inside it.

Item 25 was a blue flowered pillowcase seized from the hallway closet of Wilson's residence. Officers seized it because during their search, they had received a fax from the Gosper County, Nebraska Sheriff's Office listing a blue flowered pillowcase as one of the items stolen in a March burglary, and a photograph of the pillowcase, which matched the one they seized.

For purposes of this analysis, we assume, without deciding, that all the evidence contained in these Items would have been suppressed had a suppression motion been filed. Nonetheless, we find no reasonable probability the jury would have reached a different result in that event. Instead, we find sufficient evidence apart from those Items to convince us that the jury would nonetheless have convicted Wilson of the charged offenses—the murder of Scott Noel, the aggravated burglary of Scott Noel's home, the burglary of Elinor Fink's home, and possessing a firearm within 10 years of a person felony—as detailed below.

Tracy Noel's home in Gove County was burglarized during the day on March 12, 2008. Jewelry, cameras, video games and accessories, and a pillowcase were taken. The video games and accessories were recovered from the RV parked in Wilson's back yard.

Terry and Bernice Blakely's home near Beeler, in nearby Ness County, Kansas, was burglarized that same day. Pillowcases, jewelry, and watches were taken. Mr. Blakely's rifle had been removed from its closet, loaded, and placed on top of the deep freezer. Cigarette butts were found in the yard, although neither Terry nor Bernice Blakely smokes.

The next morning, Loa Hagelgantz was driving up the driveway to her residence in rural Bazine, also in Ness County, Kansas, when she saw a stranger drive from behind her outbuildings. He stopped and asked her for directions to the nearest gas station. After the man drove away, she entered her residence, smelled cigarette smoke, noticed items out of place, and discovered her purse was missing. She subsequently described that car as having a Saline County license tag, as Wilson's did, and as matching the description of Wilson's car. She also identified Wilson from a photo array of 55 photographs as the man she spoke to on her property that day.

6

On March 14, 2008, Matthew Andrews' home was broken into sometime between 8:30 a.m. and 3:30 p.m. Andrews lived 2 miles north of Elwood, Nebraska, approximately 100 yards off Highway 283. Items missing from the Andrews home included a pillowcase, jewelry, a rifle, cash, silverware, binoculars, video games, and bonds.

On March 24, 2008, Tara Pope discovered that her residence outside of Saronville, in Clay County, Nebraska, had been burglarized. A laptop computer, digital camera, knives, binoculars, some jewelry, and cases with compact discs had been taken. At least three compact discs stating on them "T. Pope" were found in Wilson's home during the search. Those particular discs would not have been suppressed, even had a suppression motion as to other items been granted, since the search warrant specifically listed "documentation identifying Terry and/or Tara Pope."

That same day, Joel Livgren's home in rural Clay County, Nebraska, was also burglarized. One of the items taken from his home was a camera. That camera was specifically listed on the search warrant for Wilson's residence and was recovered from Wilson's bedroom. Police discovered a brown cigarette butt outside the door to the Livgren's home and it was subsequently found to match Wilson's DNA.

Betty Switzer's rural home near Harvard, in Clay County, Nebraska, was also burglarized in March. Jewelry and a microwave were stolen, and a microwave matching hers was recovered from the RV parked in Wilson's back yard during the search.

Carol Noel returned to her home in Downs, Osborne County, Kansas, from work on March 25, 2008, to find her husband, Scott Noel, dead in their kitchen. He was lying in a pool of blood, the house was a mess, and its back door was open. One of Scott's shotguns was lying on the kitchen table and the money Carol had left on the dining room table that morning was gone. She called 911 and left the house. The autopsy showed that

7

Scott Noel died from a shotgun wound to the back of his head, likely fired from his own shotgun. Before being shot he had been severely beaten but there was no evidence that he had tried to fight back. The murderer likely stood over Noel, who lay on his stomach with his hands tied behind his back with a computer cord, when he shot him.

Police found a brown cigarette butt in the Noel's home that contained Wilson's DNA. Further, two local witnesses saw an unfamiliar car leaving the Noel house at the estimated time of the murder. Their description of that car matched Wilson's car.

That same day, Elinor Fink's home, located approximately 3 miles from the Noels' farm, was burglarized. Her home had been broken into and ransacked and all of her jewelry had been stolen. The burglar took, among other items, a metal lockbox, a fake gold coin pendant with a frame around it, and some imitation pearl necklaces. She called 911 and reported the burglary.

Wilson's wife testified that Wilson and a friend had taken trips together around March 12-14 and March 24-25, 2008, the dates of the crimes noted above. Wilson admitted that he had traveled extensively in Kansas during the weeks of March 12 and 24, 2008. Wilson stipulated that he was prohibited from legally possessing a firearm on March 25, 2008. Wilson admitted that he was unemployed and that money was " pretty tight," which provided a financial motive to commit the burglaries. Wilson's testimony was confusing and did not explain away the incriminating evidence against him.

The Kansas Supreme Court determined on direct appeal that evidence of all of the uncharged burglaries was properly admitted pursuant to K.S.A. 60-455. See *Wilson*, 295 Kan. at 614-21. That evidence included the victims' reports that numerous items were missing, including pillowcases, jewelry, digital cameras, a laptop computer, and a case of CDs. 295 Kan. at 615-16.

8

The similarities between the uncharged burglaries and the charged burglaries helped prove identity—that Wilson was the person who committed the crimes. All were rural residences, burglarized during the day when it was most likely that no one would be home. In each instance items of value were taken between mid-to-late March of 2008. The Supreme Court found the rural residences were all relatively isolated with no near or adjacent neighbors; the residences were all near a highway; the residences were within a limited area in north-central Kansas and south-central Nebraska; and the residences were all unoccupied at the time of the burglary. Moreover, the burglaries all were committed within the same general time frame as the charged burglaries, and the evidence established that Wilson was away from his home in Salina on trips around the time of the burglaries. *Wilson*, 295 Kan. at 619.

As the Kansas Supreme Court found, other similarities exist between some of the uncharged burglaries and the charged burglaries.

> "For instance, at the Scott Noel and Blakely homes, previously unloaded guns were removed from their customary locations, loaded, and left out in an obvious location. Also, officers found cigarette butts at the Noel, Blakely, and Livgren homes; and Loa Hagelgantz reported smelling cigarette smoke immediately after Wilson left her home. The evidence showed that the Noels, the Blakelys, and the Hagelgantzes do not smoke while Wilson does smoke. DNA profiles from the cigarette butts found at the Noel and Livgren homes matched Wilson's DNA profile. Further, Hagelgantz identified Wilson in a photo lineup as the man she saw and spoke to outside her home the morning of the burglary. And finally, while Wilson recognizes that items of value were taken during all robberies, he fails to point out that items taken during the burglaries of the Fink, Tracy Noel, Blakely, Switzer, Andrews, Pope, and Livgren homes later were found in Wilson's home and RV." *Wilson*, 295 Kan. at 619.

As the State admits, the Fink burglary would be the conviction most affected had the challenged Items, specifically the lockbox, been suppressed. But as the Kansas

Supreme Court found, a reasonable inference that Wilson committed the Fink burglary is raised, apart from the lockbox, by the similarity of the Fink burglary to the other burglaries. We agree.

"In sum, evidence of the underlying facts showing the manner in which the Tracy Noel, Blakely, Switzer, Andrews, Pope, and Livgren burglaries were committed— particularly evidence of the locations of the crimes and general time frame of the crimes, and evidence that stolen items from these homes were recovered in Wilson's home or RV—raises a reasonable inference that the same person—Wilson—committed those burglaries and the Fink burglary." *Wilson*, 295 Kan. at 619-20.

Similarly, the Supreme Court found:

"Evidence of the underlying facts showing the manner in which the Hagelgantz burglary was committed—particularly evidence surrounding the smell of cigarette smoke, Hagelgantz' identification of Wilson as outside her home, and Wilson's DNA profile on the cigarette butt found at the Noels' home—raises a reasonable inference that the same person—Wilson—committed the Hagelgantz burglary and the aggravated burglary of the Noels' home." *Wilson*, 295 Kan. at 620.

In short, even had the court suppressed the challenged evidence, other facts properly admitted at trial provide overwhelming circumstantial evidence that Wilson committed all of the charged crimes. Accordingly, we find no reasonable probability the outcome of Wilson's trial would have been different had a motion to suppress been filed and granted. Thus Wilson's trial counsel was not ineffective, and the district court did not err by denying his K.S.A. 60-1507 motion.

Affirmed.