No. 102,248

STATE OF KANSAS, *Appellant*, v. LINDSAY TAYLOR MAY, *Appellee*.

(269 P.3d 1260)

Opinion filed February 10, 2012.

*Roy W. Mozingo II*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellant.

*Jay Norton*, of Norton Hare, L.L.C., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Kansas State Trooper Mellick arrested Lindsay May for driving under the influence. May agreed to submit to an Intoxilyzer breath test, but her initial efforts failed to provide an adequate breath sample, albeit the machine issued an alcohol concentration reading on the insufficient volume of breath. After the trooper informed her that the insufficient breath sample constituted a test refusal under Kansas law, May requested an opportunity to retake the breath test. The trooper denied the request, but, at trial, the district court found that May had validly rescinded her test refusal. The trial court suppressed any evidence of a test refusal or of the test result on the insufficient sample. The State filed an interlocutory appeal of the suppression, and a majority of a Court of Appeals panel affirmed the district court. We granted the State's petition for review. Finding that May effected a valid rescission of her constructive test refusal, we affirm the district court's suppression of both the evidence of a test refusal and the evidence of the deficient breath sample test result.

FACTUAL AND PROCEDURAL OVERVIEW

On October 16, 2007, May was involved in a one-car traffic accident. While investigating at the scene, Trooper Mellick determined that he was warranted in requesting that May submit to a preliminary breath test (PBT). May agreed to the testing and provided a sufficient breath sample to successfully complete the PBT, which required her to blow into the instrument for 10 to 15 seconds. Based on the result of that test and his observations, Mellick arrested May for DUI.

Following the arrest, Mellick transported May to the Johnson County jail; completed and read aloud the DC-70 form; waited the required 20-minute observation period; and then requested that May provide another breath sample to use in the Intoxilyzer 8000 breath test machine. May agreed to the test, and the trooper instructed May to blow hard enough to make the machine emit a tone and then to maintain that volume of breath for 10 to 20 seconds. Despite the instructions, May failed to blow hard enough and long enough to provide a sufficient breath sample for the ma-

chine to issue a valid breath alcohol concentration number. The trooper testified that the required duration of blowing is approximately the same for the Intoxilyzer as it is for the PBT that May had successfully completed. After 3 or 4 minutes, the Intoxilyzer automatically terminates the testing and prints a deficient sample result. Here, the result was .156.

After the machine printed the deficient sample result, the trooper informed May that her attempt was considered a test refusal, which prompted an immediate request by May to retake the test. At the time of the retake request, May remained seated in front of the Intoxilyzer machine and remained under the constant observation of the trooper. The trooper conceded that it would not have been a major hardship or inconvenience to conduct a retest, but he indicated that he had refused May's request based upon his belief that she had been given an ample opportunity to provide a sufficient breath sample.

The State charged May with one count of driving under the influence, albeit the complaint listed three alternative means for committing the crime. See K.S.A. 2007 Supp. 8-1657(a)(1)-(3). May subsequently filed a motion to suppress the deficient sample result, arguing that she had properly rescinded her refusal in accordance with *Standish v. Department of Revenue*, 235 Kan. 900, 902-03, 683 P.2d 1276 (1984).

After holding two hearings and allowing further briefing on the issue, the district court granted May's motion and suppressed testimony regarding both the constructive refusal of the test and the deficient sample numerical test result. With respect to suppressing testimony that May refused the test, the district court found a valid rescission under the factors set forth in *Standish*. To support the suppression of the .156 deficient sample reading, the district court analogized to the independent testing requirements of K.S.A. 8-1004.

Under K.S.A. 8-1004, as long as a licensee submits to testing, even if producing only a deficient sample, that licensee has a right to seek an independent test. *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 236, 32 P.3d 705 (2001) (citing *State v. Chastain*, 265 Kan. 16, 19, 960 P.2d 756 [1998]). The statute further provides

that an officer's refusal to permit such additional testing renders the original, State-ordered test "not . . . competent in evidence." K.S.A. 8-1004. The district court opined that May's request to re-take the Intoxilyzer 8000 test was akin to a request for independent testing under 8-1004, so the trooper's refusal of the second (retake) test required suppression of the original, albeit deficit sample, test result.

After its motion to reconsider was denied by the district court, the State filed this interlocutory appeal with the Court of Appeals challenging the suppression of both the evidence of refusal and the result of the deficient sample. The panel majority affirmed the district court's suppression of the refusal evidence based on *Standish* but disagreed with the district court's rationale that the numerical test result from the deficient breath sample should be suppressed under an independent testing theory. Nevertheless, the panel majority ultimately also affirmed suppression of the numerical test result, concluding that *State v. Gray*, 270 Kan. 793, 18 P.3d 962 (2001), required suppression of *all* references to any testing procedures where an officer refuses subsequent testing after a proper rescission. *State v. May*, No. 102,248, 2009 WL 5206248, at *9 (Kan. App. 2009) (unpublished opinion).

Judge Buser dissented, opining that neither *Standish* nor *Gray* applied to a constructive refusal based on a deficient sample. The dissent believed it prudent to distinguish between licensees who make express refusals and licensees—like May—who agree to take the test but fail to complete it. The dissent believed that allowing rescission in the latter situation would " 'encourage deceptive practices . . . and . . . reward that deceptiveness.' " *May*, 2009 WL 5206248, at *10. Further, the dissent asserted that, based on *State v. Stevens*, 285 Kan. 307, 322, 172 P.3d 570 (2007), the deficient sample numerical result should have been admissible as "other competent evidence," as that phrase is defined in K.S.A. 2007 Supp. 8-1013(f)(2). *May*, 2009 WL 5206248, at *11-12.

## SUPPRESSION OF EVIDENCE

In petitioning for review, the State first challenges the Court of Appeals' reliance on *Standish*, suggesting that a licensee's failure

to provide an adequate breath sample is a test refusal as a matter of law that cannot be rescinded under any circumstances. Secondly, the State rejects the Court of Appeals' reliance on *Gray*, claiming that the breath alcohol concentration number generated by the Intoxilyzer 8000 on May's deficient breath sample was admissible under the provisions of K.S.A. 2007 Supp. 8-1013(f)(2) as "other competent evidence." We disagree with both contentions.

*Standard of Review*

In both issues, the State's bottom line complaint is that the district court suppressed its evidence. An appellate court applies a bifurcated standard when reviewing a district court's suppression of evidence. Without reweighing the evidence, the district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence. *Gray*, 270 Kan. at 796. Substantial evidence is such evidence that a reasonable person might accept as sufficient to support a conclusion. *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010); *Gray*, 270 Kan. at 796. The district court's ultimate legal conclusion is reviewed de novo. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

To the extent our decision involves statutory interpretation or the interpretation and application of prior court precedent, we are resolving questions of law and, thus, exercising unlimited review. *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213, 135 P.3d 1203 (2006).

*Analysis*

I. *Rescission of a test refusal based on a deficient breath sample*

On the date of May's arrest, K.S.A. 2007 Supp. 8-1001(l) provided that the "[f]ailure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs." Although May had sustained a head injury in the accident, the Court of Appeals noted the absence of any evidence that the head injury caused May to be unable to provide a sufficient volume of

breath. To the contrary, the record disclosed that, after the head injury, May successfully completed the PBT, which required the same amount of exertion and breath as the Intoxilyzer 8000. Accordingly, May's performance on the Intoxilyzer 8000 constituted a test refusal, rather than a test failure. *May*, 2009 WL 5206248, at *3-4 (citing *Call v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 79, 83, 831 P.2d 970, *rev. denied* 251 Kan. 937 [1992]). Ordinarily, the fact that a person refused a breath test is admissible evidence at the person's DUI trial. K.S.A. 2007 Supp. 8-1001(f)(8).

Nevertheless, over a quarter-century ago, in *Standish*, this court recognized that a driver's initial refusal to take a breath test "may be changed or rescinded, and if rescinded in accordance with the following rules, cures the prior refusal." 235 Kan. at 902. The opinion described the rules as follows:

"To be effective, the subsequent consent must be made:

"(1) within a very short and reasonable time after the prior first refusal;

"(2) when a test administered upon the subsequent consent would still be accurate;

"(3) when testing equipment is still readily available;

"(4) when honoring the request will result in no substantial inconvenience or expense to the police; and

"(5) when the individual requesting the test has been in the custody of the arresting officer and under observation for the whole time since arrest." 235 Kan. at 902-03.

The Court of Appeals found that substantial competent evidence existed to support the district court's determination that May had effectively rescinded her initial test refusal under the five *Standish* factors. Specifically, the panel found sufficient evidentiary support for the following facts:

"(1) May asked to retake the breath test immediately after the completion of the test resulting in the deficient sample; (2) [the trooper] could have prepared a new breath test on the Intoxilyzer 8000 within 5 minutes; (3) May was right next to the Intoxilyzer 8000 when she requested the new test; (4) administering a new test would not have been a major hardship or inconvenience for [the trooper]; and (5) at the time of her request, May had continually been in [the trooper's] custody and presence." *May*, 2009 WL 5206248, at *5.

In its petition for review, the State does not argue that the evidence fails to support rescission under the *Standish* factors. Rather,

the State takes the tack that "[t]he Court of Appeals erred in relying on *Standish.*" Launching a multi-front attack, the State suggests that the legislature may have intended to overrule *Standish* with its 1986 amendment to K.S.A. 8-1001(f); that a failure to provide an adequate breath sample is treated differently than an actual refusal to take a test because it is deemed a refusal as a matter of law; and that Kansas should abandon its adherence to the minority view and join the majority of courts which have adopted a bright line rule that an initial refusal to submit to testing cannot be cured or nullified by a subsequent consent to be tested. None of the State's arguments clear the launch pad.

The State begins by pointing to the 1986 amendment to K.S.A. 8-1001 which added the language declaring that a failure to provide an adequate breath sample as directed shall constitute a test refusal unless the person performing the test is incapable of providing an adequate sample due to a medical condition other than intoxication. L. 1986, ch. 40, sec. 2, (amending K.S.A. 1985 Supp. 8-1001[f]). The State's apparent contention is that the legislature's inclusion of the medical condition exception manifested an intent to exclude any exception based on rescission. That argument is unavailing for more than one reason.

First, the State attempts to compare apples to oranges by improperly equating an exception to the statutory definition of "test refusal" with an after-the-fact cure of a constructive test refusal. If the medical condition exception referred to in K.S.A. 2007 Supp. 8-1001(l) is met, then by statutory definition a test refusal has not occurred. Obviously, without a test refusal, there would be none of the consequences associated with a test refusal and there would be no need to cure the nonexistent test refusal via rescission. In other words, rescission cures a test refusal; it does not define when a test refusal has initially occurred. Therefore, the legislature's inclusion of the medical condition exception in its K.S.A. 2007 Supp. 8-1001(l) definition of a test refusal had absolutely no effect on *Standish*'s holding regarding the right to rescind an initial test refusal by subsequent consent.

Further, *Standish* specifically addressed the issue of constructive refusals as a matter of law. It clarified that when a law enforcement

officer asks a driver to take a breath test, "[a] conditional response such as, 'I want to talk to my attorney (or parent or relative or friend or some other third person) first,' is not a *consent* to take the test. It is a refusal." 235 Kan. at 903. The 1986 amendment appears to merely expand beyond *Standish* the circumstances whereby a driver will be deemed, as a matter of law, to have refused to submit to the breath test. Conspicuously absent from the statutory language is any reference to rescission, and we cannot divine an obtuse intent to abolish *Standish*'s right of rescission hidden in the statutory language that was employed.

The State also excises part of K.S.A. 2007 Supp. 8-1001(h) to support its argument that a test refusal rescission is legislatively prohibited. The out-of-context language cited is that "additional testing shall not be given" if a person has refused to submit to and complete a requested test. But the remaining portion of the provision speaks to an exception in the circumstance where the officer has probable cause to believe that a person under the influence has operated a vehicle in such a manner as to have caused death or serious injury to another person. K.S.A. 2007 Supp. 8-1001(h). Clearly, the provision means that an officer cannot force a person to submit to testing without his or her consent, unless that person has been involved in a very serious accident. It does not prohibit a subsequent *consensual* test.

In addition to its statutory arguments, the State urges us to find relevance in the distinction between an express, outright refusal to take a test and an action which is deemed to be a test refusal as a matter of law. It was successful in convincing the Court of Appeals' dissent that our holdings in *Standish* and *Gray* were intended to apply only to an express, outright refusal to take the test. See *May*, 2009 WL 5206248, at *10. But as our earlier recitation from *Standish* points out, that case does not support the State's factual distinction argument. Standish gave what could be described as a conditional consent, *i.e.*, he wanted to talk to his attorney before taking the test. *Standish* found that a conditional response is deemed to be a refusal as a matter of law, which is akin to finding an inadequate sample is a refusal as a matter of law.

Moreover, *Standish*'s rationale for permitting rescission was to encourage the administration of the breath test. 235 Kan. at 902. That rationale logically should apply equally to an actual refusal to blow into a machine and a constructive refusal for not blowing hard enough into the machine. If we are going to encourage a person to change his or her mind about whether to blow into the Intoxilyzer, we should likewise encourage a person to change his or her mind about whether to properly blow into the Intoxilyzer. The State's argument that the two situations are distinguishable in light of the reason for the rescission rule is simply unpersuasive.

The State also urges us to join the Court of Appeals' dissent in accepting the slippery slope argument that applying the right of rescission to inadequate breath sample cases would encourage and reward deceptiveness. "In other words, motorists could rescind not simply an initial refusal to submit to testing, as in *Gray* and *Standish*, but the tests themselves, all the while delaying a completed test as their alcohol concentration level would presumably drop." *May*, 2009 WL 5206248, at *10. We suspect that the fear of driver gamesmanship is not the product of a recent epiphany. In *Gray*, we specifically noted that the arresting officer's "impression was that Gray was trying to drag out the process in order to obtain a better result." 270 Kan. at 795. Nevertheless, we upheld the rescission.

Moreover, one could reasonably infer that, in developing its five factors for rescission, the *Standish* court contemplated the possibility that a motorist might try to use the right of rescission to manipulate the test result. The first factor speaks to the subsequent consent being "within a very short and reasonable time after the prior *first* refusal." (Emphasis added.) 235 Kan. at 903. That factor alone refutes the State's argument that allowing rescission in this case will lead to motorists making repeated inadequate attempts at the breath test while they sober up. The prophylactic nature of the requisite *Standish* factors provide adequate protection against a motorist's abuse of the right of rescission.

To conclude, we find that the right to cure a test refusal by rescission in accordance with the *Standish* factors is available to a person who is deemed to have refused testing by providing an

inadequate breath sample pursuant to K.S.A. 2007 Supp. 8-1001(l). Here, the evidence was sufficient to support the district court's findings that May's subsequent consent to testing met all five *Standish* factors and cured the initial test refusal. Accordingly, the district court was correct to prohibit any testimony that May had refused to submit to a breath test.

## II. *Deficient breath sample test result*

The State agrees with the Court of Appeals' holding that the independent testing provisions of K.S.A. 8-1004 were not directly applicable in this case. We likewise concur in that decision.

By its plain language, K.S.A. 8-1004 clearly differentiates between "testing administered pursuant to K.S.A. 8-1001" (the officer-requested test) and "an additional test by a physician of the person's own choosing" (an independent test). As the Court of Appeals explained, "*Chastain* and *Drake* do not guarantee suspected drunk drivers the right to have *police* perform additional tests conducted by the police themselves, but only to 'allow an accused an opportunity to secure independent testing in order to rebut the results of police testing, which may be used by the State upon trial.' *Chastain*, 265 Kan. at 20." *May*, 2009 WL 5206248, at *8. Nevertheless, the suppression sanction set forth in K.S.A. 8-1004 may be useful as an analog in our later discussion of the appropriate remedy for denying a person's right of test refusal rescission.

Pointing to the analysis in the Court of Appeals' dissent, the State argues that the admission of May's deficient sample breath test result of .156 was statutorily authorized. The dissent concluded that in a DUI prosecution under K.S.A. 2007 Supp. 8-1567(a)(3), based on the driver being under the influence to a degree that rendered the driver incapable of safely operating a vehicle, the State is permitted to use all "other competent evidence," as defined in K.S.A. 2007 Supp. 8-1013(f). That definition of other competent evidence includes, under subsection (2), "readings obtained from a partial alcohol concentration test on a breath testing machine." Accordingly, the dissent opined that the district court erred in refusing to

admit the deficient sample test result as "other competent evidence." *May,* 2009 WL 5206248, at *11.

We need not dissect the dissent's statutory interpretation or ruminate on whether a test result that is, by definition, deficient and inaccurate can nevertheless be deemed "competent evidence." Whether the State could have proffered the deficient sample test result in an ordinary case, *i.e.*, where the driver's right of test refusal rescission was not violated by the arresting officer, is not the question before us. The question is whether the *sanction* for a law enforcement officer's denial of a driver's right to cure an initial test refusal includes the suppression of the deficient sample test result.

The Court of Appeals' majority was persuaded by our prior decision in *Gray* that the appropriate sanction in this case included a suppression of the numerical test result from May's deficient sample. *May,* 2009 WL 5206248, at *9. *Gray* found that the trial court had "correctly ruled that *Standish* required a holding that Gray rescinded his refusal to take a breathalyzer test." 270 Kan. at 802. The "difficult issue" for the *Gray* court was whether the denial of the right to take the breathalyzer test should have resulted in a dismissal of the DUI charge. 270 Kan. at 799.

In arriving at the appropriate sanction, *Gray* looked at two Court of Appeals decisions, *Ostmeyer v. Kansas Dept. of Revenue,* 16 Kan. App. 2d 639, 644, 827 P.2d 780, *rev. denied* 250 Kan. 806 (1992), and *State v. Kelly,* 14 Kan. App. 2d 182, 786 P.2d 623 (1990). "In *Kelly,* the defendant had invoked but was denied his right to consult with his attorney in violation of K.S.A. 8-1001(f)(1)(E)." 270 Kan. at 801. Interestingly, the Court of Appeals used the independent testing scenario as a favorable analogy in determining the appropriate sanction to apply for a K.S.A. 8-1001(f)(1)(E) violation. The *Kelly* panel concluded that " 'a new trial with suppression of the breath test and any evidence obtained following defendant's request for counsel after the breath test is the proper remedy.' " *Gray,* 270 Kan. at 801 (quoting *Kelly,* 14 Kan. App. 2d at 191).

The *Gray* court then opined that the Supreme Court had "approved and applied the ruling of *Kelly*" in *State v. Luft,* 248 Kan. 911, 913, 811 P.2d 873 (1991). 270 Kan. at 801. In *Luft,* the court

found that suppression of the test results was the proper remedy for an officer's failure to give the statutory warnings regarding independent testing. 248 Kan. at 912-13. Shortly thereafter, in *Ostmeyer*, where the defendant was denied a posttest consultation with an attorney, the Court of Appeals found the appropriate remedy to be " '[s]uppression of the test results and any evidence obtained following a request for counsel.' " *Gray*, 270 Kan. at 802 (quoting *Ostmeyer*, 16 Kan. App. 2d 639, Syl.).

Ultimately, the *Gray* court determined that it was "hard pressed to see why a different rule should be applied to the facts we face in the instant case than was applied in *Kelly* and *Ostmeyer* and previously approved by our court in *Luft*." 270 Kan. at 802. The court found that, although the trial court erroneously dismissed the DUI charge, "the motion to suppress or motion in limine should have been granted, precluding *any reference to the breathalyzer testing proceedings*." (Emphasis added.) 270 Kan. at 802-03.

*Gray* did not have to address the admissibility of the number generated by an Intoxilyzer machine after the tested person provided an inadequate breath sample. But one cannot logically extricate or separate the numerical result of testing from the "breathalyzer testing proceedings," which *Gray* found to be strictly off-limits. The relevance of the .156 reading is distorted, if not destroyed, without referring to the fact that it was the product of an inadequate breath sample. Evidence of the inadequacy of the breath sample falls within *Gray*'s proscription against "any reference to the breathalyzer testing proceedings." 270 Kan. at 802-03. Accordingly, the numerical reading must also be suppressed.

In sum, we find that the district court was incorrect in suggesting that a request to retake the trooper-requested Intoxilyzer 8000 breath test was a request for independent testing under K.S.A. 8-1004. Nevertheless, the sanction for refusing an independent test provides a favorable analog for determining the sanction for refusing to give a test to one who has cured an initial refusal through a valid rescission. Moreover, our prior decision in *Gray* leads to the conclusion that the district court was correct in suppressing the test result from the deficient breath sample. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997)

(trial court's reason for ruling immaterial if ruling correct for any reason). The district court and the Court of Appeals majority are affirmed.

Affirmed.