NOT DESIGNATED FOR PUBLICATION

No. 121,809

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHELLE LYNN CANFIELD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JEAN M. SCHMIDT and JASON E. GEIER, judges. Opinion filed February 26, 2021. Affirmed in part and dismissed in part.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: The Shawnee County District Court convicted Michelle Lynn Canfield of unlawful use of drug paraphernalia and sentenced her to 6 months in jail but granted her 12 months' probation. Canfield then appealed her conviction and sentence. After she docketed her appeal, Canfield then violated the terms of her probation and the district court revoked her probation. The district court imposed her underlying six-month jail sentence. Canfield appealed the probation revocation to the Court of Appeals and amended her original docketing statement to include the probation revocation. The district court then entered an order on February 11, 2020, that released Canfield for time

served and Canfield moved to voluntarily dismiss the probation revocation appeal in the district court. Because the district court lacked jurisdiction to dismiss the appeal after Canfield amended her docketing statement, our court retained jurisdiction over the probation revocation issue. Canfield now argues the State presented insufficient evidence to support her conviction and the district court abused its discretion when it imposed the underlying six-month jail term rather than drug treatment after the court revoked her probation. We find that sufficient evidence supported Canfield's conviction and affirm the district court's verdict. However, the probation revocation issue is now moot and we dismiss Canfield's appeal on that issue.

FACTS

The State charged Canfield with unlawful use of drug paraphernalia in violation of K.S.A. 2018 Supp. 21-5709(b)(2). That crime is a class B misdemeanor under K.S.A. 2018 Supp. 21-5709(e)(3).

The district court held a bench trial in June 2019. The State first called Officer Anthony Palumbo as a witness. Palumbo testified that he had worked as a police officer with the Topeka Police Department for six years. According to Palumbo, on September 27, 2018, he responded to a call about a disturbance involving Canfield that concerned a child custody issue. Before Palumbo arrived at the reported address, he checked to see if Canfield had outstanding warrants and found that she did. Palumbo observed Canfield in the driveway when he arrived at the scene and arrested her on the warrant.

After handcuffing Canfield, Officer Palumbo watched her reach her cuffed hands into the waistband area at her back and believed she placed something into the waistband of her pants. Palumbo did not see what the object was but noticed her waistband appeared tucked inward. This suggested to Palumbo that Canfield was attempting to hide

2

something inside her pants. Palumbo then requested a female officer, Sergeant Connell, to come to the scene to conduct a search of Canfield. When Connell arrived, Palumbo observed her search Canfield and remove a glass pipe from Canfield's clothing.

The State then admitted the glass pipe into evidence. Officer Palumbo testified that his training and experience led him to believe the pipe was a meth pipe because residue and burn marks on the pipe appeared consistent with methamphetamine use. In addition to the glass pipe, Sergeant Connell found a large amount of money in Canfield's bra.

When Officer Palumbo asked for Canfield's ID, she walked to the driver's side door of a truck, indicating it was inside the truck. Palumbo requested access to the truck parked in the driveway, and the owner, who was present at the scene, consented to the search. During his search Palumbo found a purse that contained an ID for another woman, a prescription pill bottle that belonged to the owner of the truck, gift cards, a blank check that belonged to another woman with her signature, and Canfield's debit card. The purse also contained a digital scale and a bag of crystal-like substance. On cross-examination, Palumbo testified that the owner of the truck stated the purse belonged to Canfield and Canfield reached into the back area of the truck where Palumbo found the purse.

Canfield and the State stipulated to conclusions in a KBI report concerning the substance found in the purse. The KBI report concluded the bag of crystal-like substance found in the purse was methamphetamine. Officer Palumbo testified that his training and experience led him to believe the glass pipe was used to ingest methamphetamine.

Canfield testified on her own behalf and stated she owned a black purse and wallet, but the purse in the truck was not hers. Canfield contended a girl that rode in the truck earlier that evening actually owned the purse in which the methamphetamine was

3

found. Canfield testified that she did not enter the truck before the search because Officer Palumbo cuffed her hands behind her back when he arrived. She also testified that she did not hear the owner of the truck confirm that she owned the purse found in the search and she maintained it did not belong to her.

Following the presentation of evidence, the district court then confirmed with the State that the KBI did not test the glass pipe for methamphetamine but only tested the bag of methamphetamine found in the purse. The State argued the pipe's close vicinity to the methamphetamine, in addition to the burn marks and residue on the pipe, was enough to support possession of drug paraphernalia.

The district court then found that the pipe had no other purpose than to smoke methamphetamine and the State had presented sufficient evidence to conclude the purse belonged to Canfield. The court further found that the pipe was used for the purpose of ingesting methamphetamine based on Palumbo's testimony that Canfield possessed the pipe. The court found Canfield guilty of possession of drug paraphernalia beyond a reasonable doubt.

During sentencing, the State informed the district court that Canfield had a previous felony conviction for possession of opium, property offenses, and a juvenile record. The court imposed a six-month jail sentence but suspended that sentence and placed Canfield on 12 months' supervised probation. Canfield filed a timely appeal of the conviction and sentence.

After Canfield docketed her appeal with the Court of Appeals, the State filed a motion in district court for an order to show cause to revoke Canfield's probation. The attached affidavit alleged Canfield did not report to her probation officer on several occasions and failed to inform her probation officer of an arrest for theft by deception.

4

The district court held a hearing based on the show cause motion on December 6, 2019. At the hearing, the probation officer confirmed that Canfield did not report to him four times. Canfield also missed two drug tests and did not report an arrest to him. The State withdrew its allegation that she failed to remain a law-abiding citizen because she had yet to be convicted of the new offense, and the State did not present evidence on that allegation. Canfield testified on her own behalf and told the district court she had rescheduled appointments with her probation officer when she either failed to appear or did not take the drug tests. Nevertheless, the district court found by a preponderance of the evidence that Canfield failed to report and violated the terms of her probation; Canfield failed to submit to drug testing; and she failed to inform her probation officer of her contact with law enforcement. The district court revoked her probation, and the State recommended Canfield serve the underlying six-month jail sentence with 21 days of credit for time served. The court imposed her underlying sentence and ordered drug and alcohol treatment while Canfield served her sentence.

Canfield filed a second notice of appeal that specifically appealed her probation revocation on December 20, 2019. She also amended her docketing statement to include the probation revocation in her appeal. The record also includes an order indicating that on February 11, 2020, the district court modified Canfield's sentence to time served and ordered her released from jail. Canfield then filed a voluntary dismissal of her notice of appeal for the probation revocation on March 3, 2020, in the district court.

ANALYSIS

*The evidence was sufficient to convict Canfield of possession of drug paraphernalia.*

On appeal, Canfield argues K.S.A. 2018 Supp. 21-5709(b)(2) required the State to prove she possessed the drug paraphernalia with the intent to use it to "'store, contain, inject, ingest, inhale . . . [a] controlled substance into the human body.'" Because the State

5

did not test the pipe for a controlled substance, she contends the State did not prove beyond a reasonable doubt that she intended to ingest the methamphetamine found in the purse.

Canfield also believes the district court misinterpreted Officer Palumbo's testimony—Palumbo did not see Canfield place the pipe into the waistband of her pants but only noticed her movement that led to his belief that she did. Canfield also contends Palumbo did not directly see the pipe retrieved from Canfield's pants because Sergeant Connell conducted the search and retrieved the pipe. Canfield argues the only evidence to support the conviction was the pipe itself because the State did not tie the methamphetamine to Canfield and the pipe. Because of these alleged deficiencies, Canfield concludes that no reasonable person could agree with the district court's decision based on the facts presented. She asks us to reverse and vacate her conviction.

The State argues the glass pipe Canfield concealed in her pants fits the definition of drug paraphernalia in K.S.A. 2018 Supp. 21-5701(f)(12)(C). The State asserts that concealment of the pipe demonstrated her consciousness of guilt and cites to *State v. Cathey*, 241 Kan. 715, 730, 741 P.2d 738 (1987), in support of the argument. The State further argues that evidence of white residue in the pipe and burn marks at the bottom of the pipe are factors the district court may consider in order to rule the pipe is drug paraphernalia. The State also contends that a KBI test to confirm the residue on the pipe was methamphetamine was unnecessary because Officer Palumbo testified that he recognized the pipe to be a meth pipe based on his training and experience; also, Palumbo stated that glass pipes of this type had no purpose but to smoke methamphetamine, and he found Canfield's ID and the bag of methamphetamine in the same vicinity as the glass pipe. The State concludes that, in a light most favorable to the State, a rational fact-finder could find Canfield guilty beyond a reasonable doubt.

6

Our standard of review in this case is clear:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The State must prove every element of an offense beyond a reasonable doubt, but circumstantial evidence and the reasonable inferences properly drawn from that evidence can support a conviction. 307 Kan. at 669. But "[r]easonable inferences 'cannot be drawn from facts and conditions merely imagined or assumed.'" 307 Kan. at 670.

K.S.A. 2018 Supp. 21-5709(b)(2) requires the State to prove Canfield possessed the glass pipe with intent to use it to ingest, inhale, or introduce a controlled substance into her body. Proof of the required elements of unlawful possession of drug paraphernalia may be established by circumstantial evidence. *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1998); see *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016) (even gravest crimes may be proved with only circumstantial evidence).

The statute defines possession as "joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2018 Supp. 21-5701(q). "Drug paraphernalia" is defined as "equipment and materials of any kind that are used, or primarily intended or designed for use in . . . ingesting, inhaling or otherwise introducing into the human body a controlled substance." K.S.A. 2018 Supp. 21-5701(f). A glass tube or other device used to cause vaporization of a controlled substance, like methamphetamine, for inhalation is drug paraphernalia. K.S.A. 2018 Supp. 21-5701(f)(12)(C). In determining whether an object is drug paraphernalia, a fact-finder is to

consider relevant factors, such as: the pipe's proximity to controlled substances, any residue of a controlled substance on the object, legitimate uses for the object, and expert testimony concerning the object's use. K.S.A. 2018 Supp. 21-5711(a)(4), (a)(5), (a)(13), and (a)(14).

A panel of our court reversed a conviction of unlawful possession of drug paraphernalia with intent to store, contain, conceal, or consume marijuana because the State charged the defendant for one count of possession for both baggies and a digital scale. See *State v. Timmons*, No. 119,831, 2020 WL 3885621, at *4 (Kan. App. 2020) (unpublished opinion). While that definition applied to the baggies, the State could not prove the defendant used the digital scale to store or contain marijuana because it was illogical to apply that definition of drug paraphernalia to surfaces like a scale, or a table for that matter. 2020 WL 3885621, at *4.

Here, Officer Palumbo testified that he observed Canfield place something in her waistband and Sergeant Connell retrieved the glass pipe from Canfield's waistband. When viewed in a light most favorable to the State, Palumbo's testimony regarding Canfield's possession of the pipe is sufficient to prove possession. See *Timmons*, 2020 WL 3885621, at *3-4 (finding possession of digital scales and baggies where officer testified defendant could easily reach and access scale in car and officers found Ziploc bags under defendant's seat of the car).

The State also needed to prove Canfield possessed the glass pipe with the intent to use it to ingest or inhale methamphetamine. Cf. *Timmons*, 2020 WL 3885621, at *3-4. Officer Palumbo testified that, based on his experience and training, the burn marks and residue found on the glass pipe led him to believe it was a meth pipe. See K.S.A. 2018 Supp. 21-5711(a)(14). Additionally, Palumbo searched the truck and found a purse with Canfield's debit card and a bag of methamphetamine. The district court made a reasonable inference that the purse belonged to Canfield based on the debit card and

Palumbo's testimony. See *Chandler*, 307 Kan. at 670. Palumbo's testimony also supported the court's finding that the pipe had no other purpose than to smoke methamphetamine. Though based in part on circumstantial evidence, we conclude a rational fact-finder could find Canfield guilty of unlawful use of drug paraphernalia beyond a reasonable doubt. In light of this, we affirm the district court's finding that Canfield was guilty of possession of drug paraphernalia.

*The probation revocation issue is now moot.*

Canfield next argues that K.S.A. 2018 Supp. 22-3716 encourages the district court to impose nonincarcerative sanctions instead of jail time for probation violations and it was unreasonable, given Canfield's potential substance abuse issues, to impose her full sentence instead of drug treatment. Canfield complains that the district court knew of her substance abuse issue because she had a prior felony conviction that involved opiates. Canfield argues that sending her to jail, rather than placing her in a treatment program, was arbitrary and unreasonable and so the district court abused its discretion when it revoked her probation and imposed her underlying jail sentence. Canfield asks us to find the district court abused its discretion and vacate its decision to revoke her probation and order her to serve the jail term.

The State and Canfield have both informed us that the district court paroled her to time served on February 11, 2020. Because of this, Canfield moved to dismiss her appeal as it pertained to the probation revocation. The State argues the issue should be dismissed, regardless of whether Canfield filed it in district court or at the Court of Appeals. The State contends the issue is moot because Canfield completed the sanction imposed and was released outright. See *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 5, 286 P.3d 866 (2012). The State asks the panel to affirm the district court's action.

9

We note that the record includes a copy of the district court's order releasing Canfield from serving her jail sentence on February 11, 2020. Canfield's trial counsel filed a voluntary dismissal of the portion of her appeal on the probation violation in the district court, but we accepted the amended docketing statement to include the probation revocation. A district court loses jurisdiction, including to hear motions to dismiss the appeal, once the appellate court dockets the appeal. *In re Care & Treatment of Emerson*, 306 Kan. 30, 35, 392 P.3d 82 (2017). Because it does not appear that Canfield filed a dismissal in the Court of Appeals, the appeal is properly before us for review, and the district court lacked jurisdiction to dismiss the appeal.

Kansas courts have developed the mootness doctrine through court precedent and so appellate review is unlimited. *Montgomery*, 295 Kan. at 841 (citing *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 [2012]).

As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *Montgomery*, 295 Kan. at 840. The court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citations omitted]." *Stano v. Pryor*, 52 Kan. App. 2d 679, 683, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]). An issue on appeal will only be dismissed as moot if it can be shown clearly and convincingly that the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014).

The mootness doctrine is not a matter of jurisdiction and certain exceptions may apply. *Montgomery*, 295 Kan. at 841. Appellate courts commonly apply an exception when an issue "'is capable of repetition and raises concerns of public importance.'" *State*

10

*v. Kinder*, 307 Kan. 237, 244, 408 P.3d 114 (2018). "Public importance means more than that certain members of the general public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct. [Citation omitted.]" *State v. Hayden*, 52 Kan. App. 2d 202, 206, 364 P.3d 962 (2015).

There are two reasons why we have concluded that Canfield's probation violation issue is truly moot. First, in a similar case, the Kansas Supreme Court found that a defendant's probation revocation issue was moot because the defendant had served his entire underlying sentence. See *Montgomery*, 295 Kan. at 839. Canfield challenges the district court's decision to require service of the six-month sentence, which means the actual controversy ended once Canfield completed the jail term on February 11, 2020. In addition, a judgment regarding her jail term would now be ineffectual for any purpose and the judgment would not impact her rights. See *Williams*, 298 Kan. at 1082.

Second, Canfield's sole issue on appeal is limited to whether the district court abused its discretion when it imposed her underlying sentence instead of a lesser sanction after it revoked her probation. A series of recent decisions by our Supreme Court, though mostly involving allegedly illegal sentences, reinforce our ultimate conclusion that Canfield's issue is moot. The Supreme Court considered various scenarios where the mootness doctrine applied to appeals where the defendant had challenged the sentence imposed by the district court, but had completed the prison and postrelease supervision terms. *State v. Roat*, 311 Kan. 581, 583-84, 466 P.3d 439 (2020); see *State v. Tracy*, 311 Kan. 605, 609-10, 466 P.3d 434 (2020) (affirming Court of Appeals' decision to dismiss because Tracy did not provide support for meaningful interests he claimed on appeal and exceptions to mootness did not apply); *State v. Sykes*, 311 Kan. 612, 613-14, 465 P.3d 1152 (2020) (rejecting Court of Appeals' mootness analysis because courts must avoid blanket application of mootness doctrine, but court affirmed dismissal because Sykes failed to preserve issue); *State v. Mayes*, 311 Kan. 615, 617, 465 P.3d 1141 (2020)

11

(affirming Court of Appeals' decision to dismiss case as moot because defendant failed to respond to State's motion to dismiss and failed to preserve defendant's argument below).

The bottom line is the Supreme Court has determined that a mootness analysis must include whether an appellate judgment on the merits would have meaningful consequences for *any* purpose. Put another way, an appellate court must determine whether dismissal would impair a meaningful interest. *Roat*, 311 Kan. at 592-93.

In another of the recent cases, *State v. Ward*, 311 Kan. 619, 623-24, 465 P.3d 1143 (2020), the underlying issue was whether the district court erred when it initially revoked Ward's probation. On appeal, Ward argued that the probation revocation error would impact future decisions regarding grants of probation and motions for departure, so the mootness doctrine did not apply. A panel of our court dismissed the appeal. The Supreme Court distinguished *Ward* from *Montgomery* because Ward challenged the district court's decision to revoke his probation, not the sanction imposed. The Supreme Court concluded that completion of a sentence does not necessarily render a case moot and courts must carefully analyze whether dismissal would impair a meaningful interest. Because Ward provided a meaningful interest (the judgment would affect future sentences), the Supreme Court remanded to our court to reevaluate Ward's impairment claim.

To reiterate, unlike the defendant in *Ward,* in our case Canfield does not challenge the district court's decision to revoke her probation, only the sanction imposed. Any relief Canfield would receive on appeal would be to correct the sanction, or sentence, imposed by the district court. Accordingly, dismissal of this issue would not impair a meaningful interest because this appeal is limited to the sanction imposed. Since Canfield's sanction ended when she was released from jail on time served, any judgment we would make as to the wisdom of the district court's sanctioning would have no meaningful consequences. Applying *Roat*, *Ward*, and the other related Supreme Court decisions, it is abundantly

clear that Canfield's appeal of the district court's sanctioning of her for probation violation is moot.

Finally, an exception does not apply in this case. The Kansas Supreme Court has found the exception to the mootness doctrine applied where a defendant received consecutive probation terms in two separate cases and the district court revoked probation for both cases. *Hilton*, 295 Kan. at 848. The defendant argued the district court erred when it aggregated the cases. Unfortunately for resolution of the issue, the defendant was paroled, and her sentence expired before our court could consider her case. The Supreme Court held the issue was capable of repetition because it was unlikely anyone could obtain appellate relief for any error during the imposed prison term of 18 months. And the issue posed a matter of public importance because district courts would likely face circumstances of two cases with consecutive terms of probation in the future. 295 Kan. at 851.

This case is unlike *Hilton* because the decision here is not a matter of public importance, but rather it is a decision that will not bear upon individual rights or guide future conduct of the general public. See *Hayden*, 52 Kan. App. 2d at 206-07. But this case is similar to *State v. Johnson*, No. 119,049, 2019 WL 1967961, at *2-3 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* June 3, 2019. The defendant in that case appealed her probation revocation and challenged the district court's decision to bypass intermediate sanctions and revoke probation without making specific findings; however, she served her entire prison term. A panel of our court found an exception to the mootness doctrine did not apply and dismissed the appeal. 2019 WL 1967961, at *2-3.

Here, the district court imposed the six-month jail sentence in accordance with K.S.A. 2018 Supp. 22-3716(b)(3)(B)(iii). The choice between the six-month sentence over an alternative sanction was within the court's discretion. See *State v. Still*,

No. 112,928, 2015 WL 4588297, at *1 (Kan. App. 2015) (unpublished opinion). It is not abnormal, or particularly noteworthy, that a district court imposed the underlying jail term in accordance with the statute.

In summary, on this second issue we dismiss Canfield's appeal of her probation revocation as moot and find that an exception to the mootness doctrine does not apply.

Affirmed in part and dismissed in part.