NOT DESIGNATED FOR PUBLICATION

No. 123,108

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KRISTAL DAWN GASKILL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed January 28, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., MALONE and BUSER, JJ.

BUSER J.: This is an appeal by Kristal Dawn Gaskill of the district court's revocation of her probation. Gaskill contends there was insufficient evidence to show that she violated her probation by committing the offense of fleeing or attempting to elude an officer. Upon our independent review of the evidence, we hold the district court did not err. Accordingly, we affirm the district court's revocation of probation.

1

FACTUAL AND PROCEDURAL BACKGROUND

This case originated with Gaskill pleading no contest to residential burglary, in violation of K.S.A. 2017 Supp. 21-5807(a)(1), (c)(1)(A)(i), misdemeanor theft, in violation of K.S.A. 2017 Supp. 21-5801(a)(1), (b)(4), and misdemeanor possession of drug paraphernalia, in violation of K.S.A. 2017 Supp. 21-5709(b)(2), (e)(3). In exchange for her pleas, the State agreed to not recommend the district court impose the applicable special sentencing rule, which would have made Gaskill's sentence presumptive imprisonment. Instead, the State agreed to recommend that the district court "follow the presumption [absent the special rule], which is anticipated to be probation."

At sentencing, the district court found Gaskill's criminal history score was D. Based on her violation of the conditions of bond while awaiting sentencing, the district court found the State was not bound by its sentencing recommendations in the plea agreement. As a result, the State asked the district court to apply the special sentencing rule and impose imprisonment. The district court sentenced Gaskill to a controlling sentence of 26 months' imprisonment but granted her a 24-month probation based on her motion for a dispositional departure.

Gaskill did not successfully complete her probation. On the contrary, she repeatedly violated the law and the terms of her probation, which resulted in her serving intermediate jail sanctions. Still, she was allowed to remain on probation.

On October 30, 2019, a warrant was issued alleging Gaskill violated her probation because she failed to report to her probation officer several times, she was discharged from substance abuse treatment for not attending therapy, and she failed to appear for an intake interview with Comcare, a mental health and substance abuse facility.

2

In January 2020, another warrant was issued alleging that Gaskill violated several terms of her probation in an incident involving a high-speed police chase. As a result of this incident, Gaskill was charged in a separate criminal case with fleeing or attempting to elude an officer in violation of K.S.A. 2019 Supp. 8-1568(b)(1)(E), (c)(2) and driving while suspended or revoked in violation of K.S.A. 2019 Supp. 8-262(a)(1).

On June 30, 2020, the district court held a combined hearing, which included an evidentiary hearing on the two probation violation warrants, and a preliminary hearing on the fleeing or attempting to elude charge. At the hearing, Buck Herber, a former deputy sheriff with the Sedgwick County Sheriff's Office, testified regarding the fleeing or eluding charge.

Herber testified that just before midnight on January 17, 2020, he observed a white car driven by Gaskill traveling eastbound on MacArthur Road at a high rate of speed. Herber's radar unit showed the car was traveling 75 miles per hour in a 55 miles per hour zone. Upon confirming the car's speed, Herber testified he turned on his emergency lights to initiate a traffic stop but the car did not stop, and a pursuit ensued.

Herber testified that while in pursuit, the car remained on MacArthur Road, but it did not remain 20 miles over the speed limit. Instead, "[t]he speeds changed" and the car "accelerated quickly." Herber testified that when Gaskill's car was traveling past 135th Street West, it was speeding about 90 miles per hour. When the car was traveling past 119th Street West, it was speeding about 100 miles per hour.

As the pursuit continued, Herber observed Gaskill's car violate a stoplight at the intersection of MacArthur Road and K-42 Highway. Gaskill's car then proceeded eastbound on MacArthur Road. Herber testified that at some point after, the car slowed down to allow a passenger to leave the vehicle. Once the passenger left the car, Gaskill's vehicle accelerated rapidly and continued down MacArthur Road.

Sometime after the passenger exited the vehicle, another officer with the sheriff's department deployed "stop sticks" on MacArthur Road near Ridge Road. The stop sticks punctured the tires of the vehicle, but the vehicle did not stop. Later, after the stop sticks were deployed, one of the vehicle's tires fell off. Still, Herber testified that once Gaskill's car reached West Street, it was traveling 60 miles per hour in a 55 miles per hour zone. Herber also testified that Gaskill's car violated a stoplight at the intersection of MacArthur Road and Hoover. Eventually, the car left the road, went into a field, and Gaskill ran away. She was apprehended by another sheriff's deputy near the scene.

Gaskill's car was searched, and a firearm was located under the driver's seat. A pair of brass knuckles were found under the front passenger seat, and drug paraphernalia was found in the backseat of the car and inside a jacket found outside the car. Testifying at the probation violation hearing, Gaskill admitted to driving the car, but denied possessing the recovered firearm.

During the hearing, Gaskill's counsel argued that the State was "short a moving violation." Specifically, that the State had presented insufficient evidence to prove that Gaskill had committed the crime of fleeing or attempting to elude an officer by means of committing five or more moving violations during the pursuit. While conceding that Gaskill violated two stoplights, and was speeding after crossing West Street, defense counsel argued there was only "one unbroken period of speeding from the initial beginning of the stop to the point where the car slows down to let out a passenger." In short, defense counsel argued that the State had shown only four moving violations—one less than required—to establish the elements of the offense of fleeing or attempting to elude an officer.

The district court disagreed. It found the State presented evidence that Gaskill committed multiple speeding violations, along with her other moving violations, because

4

Herber testified to Gaskill committing speeding violations at three different locations and speeds. The district judge explained:

> "And I do understand and appreciate that the initial speeding is not counted as the five violations because, of course, the vehicle would not be fleeing from a police officer at that moment so of course that 75 in a 55 is not scored. The . . . former deputy testified that Ms. Gaskill was driving at speeds of 90 in a 55; at 100 in a 55; that she ran a red light. And then after she went over the stop sticks, that she was traveling at 60 miles an hour in a 55-mile-an-hour zone. And then she ran a red light."
>
> . . . .
>
> "I appreciate the argument, that it is continuous speeding, but you also have different areas where MacArthur crosses other roads. . . . So I will find that there were five or more moving violations that were committed."

As to the preliminary hearing, the district court found there was probable cause to believe Gaskill committed the offense of fleeing or attempting to elude an officer. After making its preliminary hearing ruling, the district court heard additional evidence related to Gaskill's probation violations. The State presented the testimony of Gaskill's probation officer, Elizbeth Veeder. Veeder testified to Gaskill's repeated failures to report, her failures to attend substance abuse treatments and the Comcare intake appointment.

At the conclusion of the hearing, the district court found four of the five allegations contained in the October 2019 probation revocation warrant were true based on the evidence presented at the hearing. Regarding the allegations in the January 2020 probation revocation warrant, the district court found that four of the five claimed violations were not proven. However, the district court found a preponderance of the evidence established that Gaskill fled or attempted to elude Deputy Herber and, therefore, violated her probation.

5

Upon hearing recommendations from the parties, the district court revoked Gaskill's probation and imposed the underlying sentences. In ordering incarceration, the district judge stated:

> "Fleeing and elud[ing], even though it is a low severity level, is a very dangerous offense. Ms. Gaskill was speeding at great speeds. Based upon the evidence here, she had other individuals in the car, so she not only put herself at risk, she put others at risk. She put the deputy who chased her at risk. She put anybody else that was on the road that night at risk."

Gaskill appeals.

## REVOCATION OF PROBATION

The district court found Gaskill violated her probation on multiple grounds. Although the State alleged that Gaskill had violated 10 conditions of her probation, the district court ruled the State had proven 6 violations by a preponderance of the evidence. Importantly, on appeal, Gaskill only challenges the district court's revocation of her probation based on the commission of the new crime of fleeing or attempting to elude an officer, which she contends was used "as a primary basis to revoke probation." Gaskill concludes that "the commission of this new crime figured so heavily in the district court's decision," that our court should remand the case for a new probation hearing.

On appeal, Gaskill reprises the argument that was made in the district court—there was insufficient evidence to support the district court's finding that she committed five or more moving violations and, therefore, the district court erred in relying on this new criminal offense to revoke her probation. Additionally, for the first time on appeal, Gaskill claims the State did not meet its burden of proof because it failed to present evidence that the traffic violations were moving violations.

6

*Standards of Review*

Probation is an act of judicial leniency afforded a defendant as a privilege rather than a right. *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). A district court's decision to revoke probation usually involves two steps: (1) a factual determination that the probationer has violated a condition of probation; and (2) a discretionary determination as to the appropriate disposition in light of the proved violations. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008). In the present case, Gaskill appeals the first step of the probation revocation process.

The State must establish a probation violation by a preponderance of the evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). A preponderance of the evidence is established when the evidence demonstrates a fact is more probably true than not true. 38 Kan. App. 2d at 315.

Our court reviews a district court's findings of fact to determine whether they are supported by substantial competent evidence. *State v. Weber*, 297 Kan. 805, 816, 304 P.3d 1262 (2013). Substantial competent evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). When reviewing for substantial competent evidence, appellate courts do not reweigh the evidence or assess the credibility of witnesses. *State v. Combs*, 280 Kan. 45, 50, 118 P.3d 1259 (2005).

*Sufficiency of Evidence to Prove the Traffic Offenses Were Moving Violations*

To establish that Gaskill fled or attempted to elude an officer, the State was required to prove by a preponderance of evidence that Gaskill fled or attempted to elude a pursuing police vehicle by means of committing five or more moving violations. See K.S.A. 2019 Supp. 8-1568(b)(1)(E). Under this subsection, the crime of fleeing or

7

attempting to elude a police officer is a severity level 9, person felony. See K.S.A. 2019 Supp. 8-1568(c)(2).

For the first time on appeal, Gaskill contends the State's evidence was insufficient to prove that she fled or attempted to flee Deputy Herber because the State "produced absolutely no evidence as to what acts constitute a moving violation." In other words, Gaskill argues the State needed to present evidence of what constitutes moving violations and without this evidence, the State failed to prove that Gaskill committed the moving violations.

Relying on our Supreme Court's holding in *State v. Richardson*, 290 Kan. 176, 180-81, 224 P.3d 553 (2010), Gaskill asserts "the complex nature of what constitutes a moving violation for any particular purpose requires that some sort of evidence be presented to show that the acts relied upon by the State actually constituted moving violations."

Gaskill does not favor us with any on-point legal authority in support of her novel proposition. Although she relies on *Richardson* to argue the definition of a moving violation is "complex," she does not explain why the "complex" nature of moving violations requires the State to present evidence regarding what constitutes a moving violation. 290 Kan. at 181. In *Richardson*, the defendant challenged his conviction for felony fleeing or eluding by arguing that the district court erred by not defining "moving violations" for the jury. 290 Kan. at 179. Our Supreme Court found that clear error existed because the fleeing or eluding statute did not define "moving violations" and "[t]he definition of moving violation [was] not a simple matter of common knowledge among jurors." 290 Kan. at 181.

The holding in *Richardson*, however, provides no support for Gaskill's argument. *Richardson* dealt with the necessity of providing a jury instruction defining the term

"moving violations" so the jury could apply the law to the facts of the traffic offenses and determine if the traffic offenses were moving violations. 290 Kan. at 181. *Richardson* did not suggest that evidence must be presented to prove the meaning of "moving violations." As the State argues in their brief: "What constitutes a moving violation is not a question of fact subject to the presentation of evidence. What constitutes a moving violation is a question of law."

Our Supreme Court has held K.A.R. 92-52-9 "refers to a list of Kansas statutes and states unequivocally that violations of these statues constitute moving violations." *State v. Jenkins*, 311 Kan. 39, 55-56, 455 P.3d 779 (2020). Gaskill does not assert that the traffic offenses in this case did not constitute moving violations. Nevertheless, our reading of K.A.R. 92-52-9(a)(1)(Q) (speeding in violation of K.S.A. 8-1558 is a moving violation) and K.A.R. 92-52-9(a)(1)(I) (failure to obey a traffic control device in violation of K.S.A. 8-1507 is a moving violation) convinces us that the five traffic violations were properly designated as moving violations.

Gaskill's claimed error is simply that the State failed to present evidence proving the meaning of "moving violations." We agree with the State that the meaning of moving violations is a question of law not fact. Given that this probation revocation matter was presided over by a district judge knowledgeable in applying the law to the facts, we are convinced the State was not required to present evidence on this legal issue.

*Sufficiency of Evidence to Prove Fleeing or Attempting to Elude an Officer*

Next, Gaskill specifically challenges the district court's finding that, in addition to the two stoplight violations, Gaskill violated the speed limit on three occasions during the pursuit. On the contrary, Gaskill argues the three speeding violations "cannot be counted as separate acts of speeding" because they "occurred during the uninterrupted and continuous pursuit of the suspect car." According to Gaskill, "[o]nly one act of speeding

9

could have arisen from the evidence that was produced." In summary, although in the district court Gaskill asserted the State had only proven *four* traffic violations, on appeal she argues that the State only proved *three* traffic violations—two stoplight violations and one continuous speeding violation.

Our independent review of Herber's testimony convinces us that he testified to three separate speeding violations in excess of three posted speed limits at three different locations at three different times. Herber testified:

> "[PROSECUTOR:] At 135th Street West, how fast was the vehicle going?
> "[HERBER:] She was going at approximately 90 miles an hour, ma'am.
> "[PROSECUTOR:] Was that the marked speed limit on 135th Street?
> "[HERBER:] No, ma'am.
> "[PROSECUTOR:] Was that in violation of the marked speed limit?
> "[HERBER:] Yes, ma'am.
> "[PROSECUTOR:] What was the white vehicle driving at on 199th Street West?
> "[HERBER:] Approximately 100 miles an hour, ma'am.
> "[PROSECUTOR:] Was that the marked speed limit at 119th Street West?
> "[HERBER:] No, ma'am.
> "[PRSECUTOR:] was that a violation of that speed limit?
> "[HERBER:] Yes, ma'am."

After Gaskill slowed the car to allow a passenger to leave the vehicle and the stop sticks were deployed, Herber observed Gaskill accelerate and once again exceed the posted speed limit for a third time:

> "[PROSECUTOR:] Okay. At some point does the vehicle accelerate past the speed limit once the stop sticks have been deployed?
> "[HERBER:] Yes, ma'am.
> "[PROSECUTOR:] Where was that?
> "[HERBER:] It was approximately West Street, ma'am.

"[PROSECUTOR:] And what was the posted speed limit on West Street?

"[HERBER:] 55, ma'am.

"[PROSECUTOR:] And did the vehicle go faster than that?

"[HERBER:] Yes, ma'am.

"[PROSECUTOR:] Do you know how much faster?

"[HERBER:] Approximately 60 miles an hour."

Despite Gaskill's assertion to the contrary, Herber's testimony shows that Gaskill committed three speeding violations. Herber observed Gaskill driving 90 miles per hour at 135th Street West, in violation of the 55 miles per hour posted speed limit. Herber then observed Gaskill driving 100 miles per hour at 119th Street West, in violation of the 55 miles per hour posted speed limit. And after slowing the car to permit a passenger to leave the vehicle and the stop sticks were deployed, Herber observed Gaskill accelerate to 60 miles per hour at West Street, in violation of the 55 miles per hour posted speed limit.

In Gaskill's view, there were not three instances of speeding but only one. He argues:

"The police pursuit in the instant case was continuous and uninterrupted from the time it began until the time it ended when the suspect car came to a full stop and Ms. Gaskill allegedly ran from the car. There were times during the pursuit when the suspect car slowed and accelerated, but these junctures did not interrupt the continuous pursuit."

Once again, Gaskill does not provide us with any on-point caselaw precedent in support of his legal contention, and we are unaware of any such precedent.

Gaskill's argument presumes that speeding violations may be continuous in nature. On the contrary, K.S.A. 2019 Supp. 21-5107(f) provides: "An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct or the defendant's

11

complicity therein is terminated." Recently, our Supreme Court reaffirmed that "the doctrine [of continuing offenses] applies only in limited circumstances and requires a clear expression of legislative intent. Without that clear expression, *courts presume the Legislature did not intend to create a continuing offense.*" (Emphasis added.) *State v. Valdiviezo-Martinez*, 313 Kan. 614, 627, 486 P.3d 1256 (2021) (citing *State v. Gainer*, 227 Kan. 670, 672-73, 608 P.2d 968 [1980]).

The moving violation of speeding is committed when every element occurs. Under K.A.R. 92-52-9(a)(1)(Q) a "moving violation" includes violating the "[m]aximum speed limits" permitted under K.S.A. 2019 Supp. 8-1558. See K.A.R. 92-52-9(a)(1)(Q) ("'Moving violation' means a conviction for violating . . . [a]ny of the following Kansas Statutes . . . K.S.A. 8-1555 through K.S.A. 8-1560b"); K.S.A. 2019 Supp. 8-1558 (delineating "[m]aximum speed limits"). And under K.S.A. 2019 Supp. 8-1558(a), "the limits specified" by the statute "or established as authorized by law shall be maximum lawful speeds, *and no person shall operate a vehicle at a speed in excess of such maximum limits.*" (Emphasis added.)

The plain language of the relevant statutes provides that when a person is operating a vehicle in excess of the maximum speed limit, that person violates K.S.A. 2019 Supp. 8-1558, which qualifies as a moving violation under K.A.R. 92-52-9(a)(1)(Q). There is no language in either the regulation or the statute that suggests the Legislature intended for the offense of speeding to be considered a continuing offense.

In summary, although Gaskill traveled on the same road—MacArthur Road—the speeding violations occurred at three different speeds, in excess of the 55 miles per hour posted speed limit at three separate locations and at three separate times. A reasonable person could accept these facts as being adequate to support the conclusion that Gaskill committed three separate speeding violations. See 293 Kan. at 862. We hold that substantial competent evidence supports the district court's finding that Gaskill

committed the crime of fleeing or attempting to elude an officer while she was on probation. Accordingly, the district court did not err by revoking Gaskill's probation and ordering her to serve the sentences imposed.

Affirmed.